FILED

MAR 0 5 2008

MAR - 5 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAY FRANCO & SONS, Inc.,

        Plaintiff,

    v.

CLEMENS FRANEK,

        Defendant.

## 08CV1313
## JUDGE DER-YEGHIAYAN
## MAG.JUDGE BROWN

*JURY DEMAND*

### COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff Jay Franco & Sons, Inc. ("Jay Franco"), through its attorneys, complains of Defendant Clemens Franek ("Franek"), as follows:

### INTRODUCTION

1. Jay Franco brings this action against Franek for declaratory judgment pursuant to 28 U.S.C. § 2201, for a declaration by this Court that Plaintiff's past advertisements, sales, purchases, and marketing of certain round towels did not infringe any valid trademarks or trade dress owned by Defendant, and pursuant to 15 U.S.C. § 1119 for an order canceling Defendant's U.S. Trademark Registration No. 1,502,261.

2. Plaintiff Jay Franco & Sons, Inc. is incorporated under the laws of New York and has its principal place of business at 295 Fifth Avenue, Suite 1712, New York, New York 10016. Jay Franco is in the business of importing, marketing, distributing, and selling bedding, bath, beach, and kitchen accessories. Jay Franco has been in business for over 60

-1-

years, and distributes its products nationally in department stores, specialty stores, and through mass merchants including Walmart Stores, Inc. ("Walmart"), and Target Corporation ("Target").

3. Defendant Franek, on information and belief, is a citizen of the United States who resides or has offices at 4601 Post Road, East Greenwich, Rhode Island 02818. On information and belief, in 1985 Defendant Franek co-founded CLM Design, Inc., dba Son International, Inc., an Illinois corporation, originally located at 901 Hermosa Avenue, Hermosa Beach, California 90254. Also, on information and belief, CLM Design, Inc., had other offices, affiliates, or subsidiaries operating under the same name, located at 8217 Beverly Boulevard, Beverly Hills, California 90048 and 4601 Post Road, East Greenwich, Rhode Island 02818. The State of Illinois' Department of Business Services Database indicates that CLM Design, Inc. was dissolved on July 1, 1994.

4. Franek has filed suit in this judicial district against Jay Franco's customers, Walmart Stores, Inc. ("Walmart") and Target Corporation ("Target"). Franek alleges in its Complaint (filed with this Court) that Walmart's and Target's past advertisements, sales, purchasing, and marketing of round beach towels have violated Franek's alleged trademark rights to U.S. Trademark Registration No. 1,502,261 which claims the round shape of a beach towel is a trademark ("Round Beach Towel Mark").

5. Franek demands in its Complaint against Walmart and Target: Walmart's and Target's profits and any damages sustained by Franek from Walmart's and Target's alleged

acts; an award for actual and/or statutory damages based on Walmart's and Target's alleged infringement, unfair competition, and deceptive practices; an award for enhanced and punitive damages for Walmart's and Target's alleged willful conduct; an award for Franek's costs including reasonable attorney's fees and disbursements; and an award for such other and further relief the Court deems just.

6. Plaintiff Jay Franco was the vendor to Walmart and Target for the round beach towels in question. By way of indemnification agreements with Walmart and Target, Jay Franco has agreed to hold harmless and defend Walmart and Target.

7. United States Trademark Registration No. 1,502,261 identifies that this trademark (Round Beach Towel Mark) was filed on October 29, 1986.

8. In addition, U.S. Trademark Registration No. 1,502,261 further identifies that this mark was originally applied for by CLM Design, Inc. ("CLM"), dba Sons, Inc., in 1986, and CLM on information and belief, was co-founded by Defendant Franek and is identified on said trademark registration as an Illinois corporation located at 8217 Beverly Boulevard, Suite 1, Beverly Hills, California 90048.

9. Furthermore, U.S. Trademark Registration No. 1,502,261 also identifies a nunc pro tunc assignment recorded on July 2, 2007 allegedly transferring the rights of said trademark registration from the then dissolved CLM Design (dissolved in 1994) to Defendant Franek.

10. Sometime in 2006, Jay Franco received a letter from Franek's former counsel, Jenner & Block, notifying Jay Franco of violating U.S. Trademark Registration No.

1,502,261 for its past sales of round towels to Target, Walmart, and other retailers. Settlement discussions ensued at that time between Franke and Jay Franco. However, these discussions ended sometime in the fall of 2006, and after time passed, Jay Franco believed that the matter had ended. (See Exhibits A through D, correspondence letters between the parties' respective legal counsel discussing settlement).

11.   In January 2007, Franck brought suit in this district against Jay Franco's customers, Walmart and Target, for allegedly violating Franek's alleged trademark rights to the Round Towel Mark.

12.   On information and belief, in light of the clear accusations by Franek in 2006 that Jay Franco and its customers, Walmart and Target, have violated Franek's rights, Jay Franco has a reasonable apprehension of being sued by Franek for alleged trademark infringement.

13.   Franek's allegations that Jay Franco's customers, Walmart and Target, have violated Franek's trademark rights under federal and state laws are seriously and irreparably injuring and adversely affecting Walmart, Target, and Jay Franco. Unless this Court declares Plaintiff's rights in this case of actual controversy, Defendant's allegations will continue to injure and adversely affect Walmart and Target, as well as Jay Franco. Plaintiff has no adequate remedy at law.

14.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1332, 1338(a) and 1338(b); 15 U.S.C. § 1121; and 28 U.S.C. § 1367.

15.   Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## COUNT ONE

(Declaratory Judgment as to Non-Infringement Under The Lanham Act)

16. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 15 as if fully set out herein.

17. Plaintiff by this Count 1 seeks a declaration that Plaintiff's past advertisements, sales, purchasing, and marketing of round beach towels of which Defendant now complains do not infringe Defendant's alleged trademark rights and do not violate the Lanham Act, 15 U.S.C. §§ 1051, 1114, 1125, *et seq.*, including but not limited to §§ 32 and 43 of the Lanham Act.

18. The trademark rights claimed by Franek to the United States Trademark Registration No. 1,502,261 for the round shape of a beach towel are invalid and unenforceable because the claimed round shape is at least functional.

19. Further, the claimed round shape of a beach towel has been dedicated to the public upon the expiration of at least U.S. Patent Nos. 2,803,845 and 2,731,997 which formerly claimed the round shape of a towel as functional, and have since expired.

20. Accordingly, Franek has no protectible trademark or trade dress rights in the configuration or appearance of the shape of a round beach towel.

21. Even if Franek had protectible trademark or trade dress rights to the round shape of a beach towel, Jay Franco's alleged past advertisements, sales, purchasing, and marketing of round beach towels did not violate Sections 32 or 43 of the Lanham Act, or any other

provision of the Act. Among other things, Jay Franco's alleged past advertisements, sales, purchasing, and marketing of round beach towels were not likely to cause confusion, mistake, or deception as to the source of Jay Franco's respective round towel products.

## COUNT TWO

(Declaratory Judgment that Franek's United States Trademark Registration No. 1,502,261 is Invalid Because the Round Shape of a Towel is Functional)

22. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 21 as if fully set forth herein.

23. Franek does not have any valid proprietary trademark rights to United States Trademark Registration No. 1,502,261 claiming the round shape of a beach towel because it is functional as depicted, disclosed, and claimed in at least U.S. Utility Patent Nos. 4,991,978; 4,794,029; 2,803,845; and 2,731,997 and French Utility Patent No. 2,399,229 (see Exhibit E).

24. Franek does not have any valid proprietary trademark rights to United States Trademark Registration No. 1,502,261 claiming the round shape of a beach towel because it is functional in view of the extensive touting (by the applicant of this mark) of its functionality through advertisements, which state at least that, "[T]he round shape eliminates the need to constantly get up and move your towel as the sun moves across the sky." (See Exhibit F).

25.  Franek does not have any valid proprietary trademark rights to United States Trademark Registration No. 1,502,261 claiming the round shape of a beach towel because it is functional in view of the admissions by the applicant of this mark of the functional nature of the round towel: "the old fashioned way of getting up and moving and turning a rectangular towel to follow the sun was no longer necessary - with the round towel a person need only rotate the body without moving the towel." (See Exhibit G).

26.  Pursuant to Section 37 of the Lanham Act, 15 U.S.C. §1119, this Court is empowered to order cancellation of trademark registrations in any civil action in which the validity of the mark is placed in issue.

### COUNT THREE

(Cancellation of Franek's U.S. Trademark Registration No. 1,502,261 (Claiming the Round Shape of a Towel) as Invalid Because it was Obtained Through Deception of the United States Patent and Trademark Office.)

27.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 26 as if fully set out herein.

28.  Upon information and belief, Plaintiff avers that Franek's alleged United States Trademark Registration No. 1,502,261 which claims the round shape of a beach towel was obtained fraudulently and in bad faith within 15 U.S.C. §1115 (b) (i), and is subject to cancellation pursuant to 15 U.S.C. §1064(3).

29. Upon information and belief in proceedings before the U.S. Patent and Trademark Office to obtain U.S, Trademark Registration No. 1,502,261 in 1986 and 1987, the applicant of said trademark failed to disclose to the U.S. Patent and Trademark Office at least expired U.S. Utility Patent Nos. 2,803,845 and 2,731,997 and expired French Utility Patent No. 2,399,229 covering and claiming the same round shape of a towel for which the applicant of the round beach towel trademark was seeking trademark registration. The existence of these expired patents, upon information and belief, was within applicant's knowledge before and during applicant's prosecution of said trademark. However, the applicant of said trademark failed to disclose these expired patents to the U.S. Patent and Trademark Office.

30.    Upon information and belief, in proceedings before the U.S. Patent and Trademark Office to obtain U.S. Trademark Registration No. 1,502,261 in 1986 and 1987 the applicant of said trademark failed to disclose to the U.S. Patent and Trademark Office the applicant's own advertisements touting the functionality of the round shape of said trademark in question for which the applicant of the round beach towel trademark was seeking trademark registration. The existence of applicant's own advertisements, upon information and belief, was within applicant's knowledge before and during applicant's prosecution of said trademark. However, the applicant of said trademark failed to disclose its own advertisements to the U.S. Patent and Trademark Office.

31.    Information regarding said expired patents and said applicant's own advertisements was material to the prosecution of Franek's alleged Trademark Registration.

-8-

Upon information and belief, if the U.S. Patent and Trademark Office had been informed of the claims of functionality of the round beach towel in question, as evidenced by at least said expired utility patents and applicant's own advertisements, the U.S. Patent and Trademark Office would not have issued the registration for the claimed round shape of a beach towel.

32.    Upon information and belief, said applicant's trademark application for the round beach towel trademark made on October 29, 1986, was filed after the expiration of at least said utility patents, which expired at least as early as 1973, and was done with the intention to attempt to monopolize the round shape of a beach towel in perpetuity.

33.    Pursuant to Section 37 of the Lanham Act, 15 U.S.C. §1119, this Court is empowered to order cancellation of trademark registrations in any civil action in which the validity of the mark is placed in issue.

34.    On information and belief, to the extent that Franek was involved in the procurement of said trademark registration by false means, Franek is liable under Section 38 of the Lanham Act, 15 U.S.C. §1120 to Jay Franco for any damages resulting as a consequence of Franek's procurement of said trademark registration by false means, including Jay Franco's, Walmart's and Target's attorney's fees which Jay Franco has incurred as a result of Franek's claims of infringement against Walmart and Target.

-9-

## COUNT FOUR

(Declaratory Judgment that Franek's Trademark Rights to U.S. Trademark Registration No. 1,502,261 are Invalid Because the Assignment of the Trademark Rights from CLM Design, Inc. to Franek Was Invalid)

35. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 34 as it fully set forth.

36. CLM Design, Inc. was dissolved on July 1, 1994 as indicated on the State of Illinois' Department of Business Services Database (See Exhibit H).

37. U.S. Trademark Registration No. 1,502,261 identifies a nunc pro tunc Trademark Assignment recorded on July 2, 2007 transferring the rights of U.S. Trademark Registration No. 1,502,261 from the then dissolved CLM Design, Inc. to Defendant Franek.

38. On information and belief, the assignment of U.S. Trademark Registration No. 1,502,261 from CLM Design, Inc. on July 2, 2007 to Plaintiff Franek was an invalid and naked assignment because no good will was transferred with the assignment and/or because the trademark rights were transferred from a dissolved, non-existent corporation.

39. On information and belief, because the trademark rights to U.S. Trademark Registration No. 1,502,261 were transferred from a dissolved non-existent corporation to Defendant Franek and/or without the transfer of any good will to Defendant Franek, said assignment was invalid and the Round Beach Towel Mark that was the subject of said trademark registration was effectively abandoned.

-10-

40. On information and belief, neither Franek nor CLM Design, Inc. owned U.S. Trademark Registration No. 1,502,261 from July 1, 1994 to July 2, 2007. Therefore, U.S. Trademark Registration No. 1,502,261 was effectively abandoned during this 12 year period for lack of use by CLM Design, Inc. and because CLM Design, Inc. was not the owner of said trademark registration or the Round Beach Towel Mark, because CLM Design, Inc. was dissolved.

### COUNT FIVE

(Declaratory Judgment as to Non-Infringement under Illinois Law)

41. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 40 as if fully set forth herein.

42. Plaintiff's aforesaid actions do not violate the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq.*

43. Plaintiff's aforesaid actions do not violate the Illinois Counterfeit Trademark Act, 765 ILCS 1040 *et seq.*

44. Plaintiff's aforesaid actions do not violate Illinois' common law of unfair competition.

WHEREFORE, Jay Franco respectfully requests that the Court enter an Order:

a) Declaring Franek's alleged U.S. Trademark Registration No. 1,501,261 invalid and unenforceable;

b) Declaring the Trademark Assignment of U.S. Trademark Registration No. 1,502,261 from CLM Design, Inc. to Franek invalid and unenforceable;

c) Canceling Franek's alleged U.S. Trademark Registration No. 1,501,261 and striking it from the Principal Register;

d) Awarding Jay Franco its damages, including attorney's fees, incurred as a result of Franek's claims; and

e) Such other relief as this Court deems just.

Dated: February 29, 2008

JAY FRANCO & SONS, INC.

By: _____

EZRA SUTTON, Esq.
EZRA SUTTON, P.A.
Plaza 9, 900 Route 9 North
Woodbridge, New Jersey 07095
Tel: 732-634-3520
Fax: 732-634-3511

# EXHIBIT A

LAW OFFICES

# EZRA SUTTON, P. A.

A PROFESSIONAL CORPORATION

PLAZA 9

900 ROUTE 9

WOODBRIDGE, NEW JERSEY 07095

EZRA SUTTON*
JOSEPH SUTTON**
ANTHONY M. MORANO*

*N.J. AND N.Y. BARS
**N.J. BAR AND N.Y. FEDERAL BARS

PATENTS
TRADEMARKS
COPYRIGHTS
LICENSING

(732) 634-3520
FAX: (732) 634-3511
www.ezrasutton.com

June 8, 2006

**VIA FAX (312-840-7733) AND MAIL**
Elayna T. Pham, Esq.
Jenner & Block, LLP
One IBM Plaza
Chicago, IL 60611-7603

RE: Our File: FRANCO 4.0-002
**Trademark Registration No. 1,502,261**
**on Round Towel**

Dear Ms. Pham:

Joe N. Franco of Jay Franco & Sons Inc. has requested our office to review this trademark matter and respond to your letter of June 2, 2006.

We shall send you a complete written reply by fax and email on Thursday, June 15, 2006, including a proposed settlement offer.

However, it is interesting to note, in the case of Kohler Co. v. Moen Inc., 12 F.3d 632 (7th Cir. 1993) Judge Cudahy of the Court of Appeals referred to your client's trademark registration for a round beach towel (Reg. No. 1,502,261) as a "horrible example" of a trademark registration.

In addition, it is also interesting to note, that although this trademark registration was granted in 1988, circular towels were disclosed as early as 1957 (see U.S. Patent No. 2,803,845), and this patent went into the public domain 17 years later in 1974, before the trademark application for the round beach towel was even filed..

If you have any questions, please call me.

Sincerely yours,

EZRA SUTTON

ES/dlp
cc: Joseph N. Franco (by fax)

# EXHIBIT B

LAW OFFICES

# EZRA SUTTON, P. A.
A PROFESSIONAL CORPORATION
PLAZA 9
900 ROUTE 9
WOODBRIDGE, NEW JERSEY 07095

EZRA SUTTON*
JOSEPH SUTTON**
ANTHONY M. MORANO*

PATENTS
TRADEMARKS
COPYRIGHTS
LICENSING

*N.J. AND N.Y. BARS
**N.J. BAR AND N.Y. FEDERAL BARS

June 15, 2006

(732) 634-3520
FAX: (732) 634-3511
www.ezrasutton.com

**VIA FAX (312-840-7733) AND MAIL**
Elayna T. Pham, Esq.
Jenner & Block, LLP
One IBM Plaza
Chicago, IL 60611-7603

RE: Our File: FRANCO 4.0-002
**Trademark Registration No. 1,502,261
on Round Towel**

Dear Ms. Pham:

As we discussed, we are hopeful that this case can be settled, but if not, we have prepared and enclose for your review a draft of our legal arguments. These arguments would be set forth in a motion for summary judgment to show that there is no liability, as a matter of law, based on the many cases we have cited. If you disagree with our legal analysis, we would be interested in your cases that refute our legal analysis.

Further, if you decide to file a Court action, we think that it would violate Rule 11 and lead to sanctions. This is especially true in this case because we already have an appellate judge (Judge Cudahy of the Seventh Circuit Court of Appeals) who has already stated that CLM's trademark registration is a "horrible" trademark registration that results "in a perpetual monopoly inconsistent with the utility patent laws." As a litigator, you must realize that this is a powerful statement by an appellate judge that would be respected by a district court judge if this case goes to court.

Further, when Judge Cudahy made these statements, he was not aware of U.S. Patent No. 2,803,845 which specifically claims a circular towel and specifically discloses its <u>function</u> of "providing a relatively large area of toweling for use by small children..."Judge Cudahy also did not know that this patent expired in 1974, and that the structure of a circular towel went into the public domain in 1974, long before CLM filed its trademark application in 1986. These facts only serve to strengthen Judge Cudahy's statement that CLM's trademark registration is a perpetual monopoly that is inconsistent with the '845 utility patent.

Elayna T. Pham, Esq.
June 15, 2006
Page 2

As you must also realize, if the Trademark Examiner for the CLM trademark application had known about the earlier granted '845 patent, the Trademark Examiner would not have granted the CLM trademark registration for a circular towel. However, Trademark Examiners are not required to search patents, which results in one government agency, the Trademark Office, making a decision inconsistent with another government agency, the U.S. Patent Office, which had already granted a patent on a circular towel.

In addition, we have started reviewing the cancellation proceeding (No. 17,437) to cancel CLM's trademark registration, and we note that a motion for summary judgment was filed by the petitioner to cancel CLM's registration based on functionality, but the case was settled before the motion was decided. Therefore, the issue of functionality was not decided in that proceeding. In addition, if this case is not settled, we would want to know the terms of the settlement with the petitioner, including whether the petitioner was allowed to sell round towels after the settlement.

Based on our legal analysis, and based on the legal analysis of Judge Cudahy, we are of the opinion that CLM is not legally entitled to a monetary award. However, we have taken into consideration the cost of a motion for summary judgment and a possible appeal. Based on these costs, Jay Franco & Sons would be willing to settle this dispute for ▓▓▓▓▓▓ which would include a full release for Jay Franco & Sons, and a full release of its customers who purchased round towels from Jay Franco & Sons and/or its related company. Jay Franco & Sons would also agree not to make or sell round towels in the future. By this offer, you have the equivalent of an injunction and a monetary recovery, without going to Court.

This offer will only remain open until 4:00 PM on June 22, 2006. We look forward to receiving your favorable response.

Sincerely yours,

EZRA SUTTON

ES/dlp
cc: Jay Franco & Sons, Inc. (by fax)

**I.    CLM's "Incontestable" Round Towel Trademark is Functional and Generic; Therefore, it is Not Protectable.**

"Section 1065 of the Lanham Act says that even 'incontestable' marks must yield to prior users, and that the protection dissipates if the mark becomes **generic**. Moreover, and more to the point, § 1065 says that a claim based on an incontestable mark may be defeated 'on a ground for which an application to cancel may be filed at any time under paragraphs (3) and (5) of section 1064 of this title.' Section 1064(3) provides that a mark may be cancelled if it is, or becomes, **functional**." Eco Mfg. LLC. v. Honeywell Intern., Inc., 357 F.3d 649, 651 (7th Cir. 2003); see also Eco Mfg. LLC. v. Honeywell Intern., Inc., 295 F.Supp.2d 854, 865 (S.D. Ind. 2003) ("'Incontestable' is something of a misnomer, ...[15 U.S.C. § 1115(b)] authorizes a number of defenses, including functional[ity] fraud, abandonment, license, antitrust violations, laches, estoppel, and acquiescence."); see 1 J.T. McCarthy, Trademarks and Unfair Competition, §32:149 (4th ed. 2004) ("It is important to note that while genericness is not on the....[15 U.S.C. § 1115(b)] list, Lanham Act § 15(4) specifically mandates that no incontestable right shall be acquired in a generic name."); see also TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of Creator, 297 F.3d 662 (7th Cir. 2002)("[A]n incontestable registration is more like a bursting bubble presumption of non-genericness than the sort of indomitable presumption that the [registrant] seeks.").

Thus, incontestability cannot shield CLM Design, Inc.'s round towel trademark registration from being cancelled due to functionality or genericness.

1

## A.    CLM's Trademark is Functional and Invalid.

McCarthy on Trademarks and Unfair Competition states:

> **Functional patent protection and trademark protection are mutually exclusive.** As one court stated, **when the configuration is disclosed in a functional patent, and the patent expires, the public "now has its inning."**

See 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §7:89.1, at 7-203 (4th ed. 1996)(quoting Zippo Mfg. Co. v. Rogers, Imports, Inc., 216 F. Supp. 670 (S.D. N.Y. 1963))(emphasis added).

In addition, "an expired utility patent has vital significance in resolving a trade dress claim, for a utility patent is strong evidence that the features therein claimed are functional." Traffix Devices, Inc. v. Marketing Displays, Inc., 121 S.Ct. 1255, 1257 (2001); but see Vornado Air Circulation Sys. v. Duracraft Corp., 58 F.3d 1498, 1510 (10th Cir. 1995)("We hold that where a disputed product configuration is part of a claim in a utility patent, and the configuration is a described, significant aspect of the invention, see 35 U.S.C. § 112, so that without it the invention would not fairly be said to be the same invention, patent law prevents its protection as trade dress, even if the configuration is **nonfunctional.**")(emphasis added). Also,

> the Court of Customs and Patent Appeals [the predecessor of the Federal Circuit] held in In re Application of Shenango Ceramics, Inc., 362 F.2d 287 (CCPA 1996), that a feature which is the subject of a utility patent **and has gone into the public domain** after the expiration of [a] patent **cannot function as a trademark** to distinguish the goods of an applicant from those of it(s) competitors. (That is to say, the functional or utilitarian shape...in the absence of patent protection, **the public has the unrestricted right to use the subject matter of the patent.**).

2

Best Lock Corp. v. Schlage Lock Co., 413 F.2d 1195, 1198 (CCPA 1969) (emphasis added).  Also,

the United States Supreme Court in Singer Mfg. Co. v. June Mfg. Co., has held:

> It is self-evident that on the expiration of a patent the monopoly created by it
> ceases to exist, and the right to make the thing formerly covered by the patent
> becomes **public property**.  It is upon this condition that the patent is granted.
> It follows, as a matter of course, that on the termination of the patent there
> passes to the public the right to make the machine in the form in which it was
> constructed during the patent.

16 S.Ct. 1002, 1008 (1896)(emphasis added).

In fact, the Seventh Circuit has observed that the functionality rule is the safeguard that

mediates conflicts between the policies of freedom to copy the elements of an expired utility patent

and the exclusive rights conferred by federal trade dress law. See 1 J. Thomas McCarthy, McCarthy

on Trademarks and Unfair Competition §7:64, Fn. 11 (4th ed. 2006) (citing Thomas & Betts Corp.

v. Panduit Corp., 138 F.3d 277 (7th Cir. 1998) ("The safeguard against an impermissible extension

of a patent monopoly by a trademark... is the functionality doctrine.").

CLM's trademark Registration No. 1,502,261  (Exhibit A) for a round towel configuration

was first used in commerce on February 14, 1986, was filed on October 29, 1986, and registered on

August 30, 1988.  However, U.S. Utility Patent No. 2,803,845 ("the '845 patent") (Exhibit B) issued

to Marjorie Paschall Bradford, entitled "Circular Towel" was granted in 1957 and expired 17 years

later in 1974.  The '845 patent disclosed in its patent drawings and claimed a functional circular-

shaped towel that is the same circular shaped configuration shown in CLM's trademark Registration

No. 1,502,261.  When this patent expired, the circular design shown in this patent went into the

**public domain,** and it cannot thereafter function as a trademark, as a matter of law.  See Shenango,

id.; see also Best Lock, id.

3

The drawing in the '845 patent, as illustrated in Figure 1, explicitly shows the circular design which CLM later registered as a trademark in Registration No. 1,502,261.

Also, the specification of the '845 patent discloses the following:

"An object of this invention is to provide a towel which is **constructed in circular form...**" (Col. 1, lines 16-17)(emphasis added).

"Referring to the drawing the **numeral 10 designates generally a circular fabric...**" (Col. 2, lines 1-2)(emphasis added).

"The **circular form of the towel body 10** provides [the function of] a **relatively large area of toweling for use by small children...**" (Col. 2, lines 22-23)(emphasis added).

In addition, claim 1 of the '845 patent specifically claims a **"circular fabric body."** (Col. 2, lines 32-34)(emphasis added).

Thus, the expired '845 utility patent leaves no doubt that the shape and configuration of a circular towel was claimed in this patent. Therefore, the shape is **functional** and has been in the **public domain** since 1974 when the '845 patent expired. Since the configuration of "circular towel body 10" in the '845 patent is the same as the circular towel configuration depicted in CLM's trademark Registration No. 1,502,261, it follows that CLM's trademark should be held invalid and cancelled as a matter of law. See Best Lock, id. (holding that a patented "figure eight" design was not registrable as a trademark because it was **functional** as disclosed in the drawings, claims, and specification of U.S. Patent No. 1,575,092); see also Shenango, id. (holding that a patented under-rim design was not registrable as a trademark because it was **functional** as disclosed in the drawings, claims, and specification of a patent).

4

Furthermore, CLM's trademark registration is the equivalent of a **perpetual** design patent on its round towel design which is a violation of the Constitution.  As stated in <u>Kohler Co. v. Moen Inc.</u>:

> [CLM's] trademark registration for a round beach towel, consisting of what appears to be a simple white disc, is a "**horrible example** of allowing a federal trademark registration to substitute for the grant of a design patent.... The registrant presumably has a monopoly on the production of beach towels that are round. Other registrations (and monopolies) may follow for triangular beach towels, trapezoidal beach towels or whatever.... The **functionality** defense seeks to protect the integrity of the utility patent system by excepting from configuration trademarks those products for which trademark protection would result in a **perpetual monopoly** inconsistent with the utility patent laws. <u>Vaughn Mfg. Co. v. Brikam Int'l Inc.</u>, 814 F.2d 346, 349 (7th Cir.1987) ("The defense exists because granting exclusive rights to functional features of products is the domain of patent, not trademark, law.") <u>W.T. Rogers Co. v. Keene</u>, 778 F.2d 334, 338 (7th Cir.1985). No one questions that functional features... for which the patent has expired, **are open to everyone to copy.** Trademarks may not be acquired to defeat the right to copy.

12 F.3d 632, 647-48 (7th Cir. 1993)(emphasis added).  Accordingly, CLM's trademark registration for a round towel is an improper extension of the 17 year patent monopoly by creating a **perpetual monopoly** on a functional product.

**B.    CLM's Trademark is Generic and Invalid.**

"In <u>Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.</u>, the Second Circuit created a new category of things not capable of trade dress protection. This new category was dubbed "generic"-but its policy is similar to that of functionality. The court said that "an idea, a concept or a generalized type of appearance" is "generic" and not capable of trade dress protection regardless of the acquisition of secondary meaning." <u>See</u> 1 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> §7:69 (4th ed. 2006)(citing <u>Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.</u>,

58 F.3d 27 (2d Cir. 1995).

"Judge Posner has observed: 'Functional features are by definition those likely to be shared by different producers of the same product and therefore are unlikely to identify a particular producer.' See 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §7:64, Fn. 16 (4th ed. 2006)(citing Publications Int'l, Ltd. v. Landoll, Inc., 164 F.3d 337 (7th Cir. 1998)("Unabridged dictionaries, board-page books for infants, travel books, encyclopedias, atlases, law books, and comic books are other examples of book genres that contain innumerable look-alikes published by different publishers, look-alikes that do not, however, confuse consumers about the identity of the publisher of any particular book."). In the same vein, "courts have held that a product shape can lack protection as being 'generic' if the trade dress is defined as such a hackneyed or **common design** that it cannot identify any particular source." See 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §8:6.1 (4th ed. 2006)(emphasis added). Moreover, "courts have noted that common product shapes can be classified as '**generic**' and hence incapable of trade dress protection. See id. (emphasis added)(("For example, the Sixth Circuit remarked that: '[G]eneric product configurations are not protectable as trade dress under §43(a).'") (citing Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc., 280 F.3d 619, 638 (6th Cir. 2002)("This reasoning applies equally well to generic product configurations, for no designer should have a monopoly on designs regarded by the public as the basic form of a particular item.))). See 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §7:81 (4th ed. 2006) ("A heart-shaped candy box is such a standard, oft-used shape as to be a "generic" shape, incapable of trade dress status.... no one candy seller could ever prove that it had achieved trademark status and not just decorative appeal, in such a hackneyed design as a candy box in the shape of a heart. A

6

heart-shaped candy box is no more capable of trade dress protection... than would be Christmas wrapping paper in red and green showing images of Santa Claus."); see also Nora Beverages, Inc. v. Perrier Group of America, Inc., 269 F.3d 114, n. 4 (2d Cir. 2001) (1.5 liter clear, ribbed polyethylene bottle for spring water was "generic," but could as well have been found to be "functional.").

The following websites are all selling round or circular towels:

1) www.beachstore.com (see attached Exhibit C);

2) www.4thebeach.com (see attached Exhibit D);

3) zkjtrade.en.alibaba.com (see attached Exhibit E);

4) www.kohls.com.com  (see attached Exhibit F);

5) www.pooldawg.com (see attached Exhibit G); and

6) www.allvolley.ball.com (see attached Exhibit H).

These websites show that a round towel is a "common design," marketed by numerous companies.  Thus, the design of a round towel is **generic** and cannot identify any particular source. Accordingly, a round-shaped towel is such a "standard and often-used shape as to be a 'generic'" shape that it is incapable of trademark protection.  No one seller or designer, including CLM, should have a perpetual monopoly on a round-shaped towel design that is regarded by the public as a generic and basic towel design.  As Judge Cudahy stated in Kohler Co. v. Moen Inc., CLM's trademark registration for a round beach towel, "consisting of what appears to be a simple white disc, is a **horrible example** of allowing a federal trademark registration to substitute for the grant of a design patent.... The registrant presumably has a monopoly on the production of beach towels that are round. Other registrations (and monopolies) may follow for triangular beach towels, trapezoidal beach towels or whatever..... [and] would result in a **perpetual monopoly** inconsistent with the utility patent laws." 12 F.3d 632, 647 (7 th Cir. 1993).

7

## II. AS A RESULT OF LABELING THERE WAS NO LIKELIHOOD OF CONFUSION

Jay Franco & Sons, Inc. prominently displayed and labeled its towels with its registered trademark **JUST FOR BEACH**. In addition, the towels sold to Target Brands, Inc. prominently displayed Target's registered **"BULLSEYE" (design logo)** (in addition to Jay Franco & Sons, Inc.'s registered **JUST FOR BEACH** trademark) on the towels themselves and on the labels as source indicators. (See Exhibit H which includes the label and trademark registrations).

It is well recognized, that when companies such as Target Brands, Inc. and Jay Franco & Sons, Inc. have strong and recognized trademarks, and use them to sell their towels, there is no confusion and no trademark infringement. Labels can be integral, if not **dispositive** factors, in dispelling any notions of consumer confusion. W.B. Marvin Mfg. Co. v. Howard Berger Co., 33 Fed. Appx. 588, 591 (2d Cir. 2002). See L.A. Gear v. Thom McCan Shoe Co., 988 F.2d 1117 (Fed. Cir. 1993), where the Court found defendant's trademark BALLOONS on an identical shoe was sufficient to avoid confusion. Also, in Reebok International Ltd. v. Alon, 5 U.S.P.Q. 2d 1830, 1831 (C.D. Cal. 1987) the court found consumer confusion unlikely "given the overall differences in appearance and the highly visible individual names of each of the brands of shoes."

"[In] Bose Corp. v. Linear Design Labs, Inc., 467 F.2d 304, 309, 175 USPQ 385, 389 (2d Cir. 1972),...the court found that 'the presence of [defendant's] name on the product goes far to eliminate confusion of origin.'" L.A. Gear, 988 F.2d at 1133 (emphasis added). Farberware, Inc. v. Mr. Coffee, Inc., 740 F. Supp. 291 (D. Del. 1990) (in this post-sale confusion case, where competitive coffee makers are clearly labeled with their respective marks and names of manufacturers is a factor proving that confusion is not likely; preliminary injunction against copying of shape was denied).

8

Munsingwear Inc. v. Jockey Int'l, 31 U.S.P.Q. 2d 1146, 1150 1994 WL 422280 (D. Minn. 1994), aff'd, 33 U.S.P.Q. 2d 1383 (8th Cir. 1994) (Prominent use by both parties of their word marks on men's underwear design claimed as trade dress "helps reduce" the likelihood of confusion. "The presence of permanent labeling has been generally recognized to make post-sale customer confusion unlikely."). DC NL Inc. v. Almar Sales Co., 47 U.S.P.Q. 2d 1406, 1997 WL 913941 (N.D. Cal. 1997) (imitator's labeling and different packaging of look-alike hair brush held to prevent likely confusion).

Thus, the label of Jay Franco & Sons, Inc. and Target Brands, Inc. bearing their respective registered trademarks **JUST FOR BEACH** and **"BULLSEYE" (design logo)** is dispositive in this case in refuting any argument of confusion put forth by CLM.

### III.    CLM IS NOT ENTITLED TO ANY DAMAGES

Under the Lanham Act, an award of the wrongdoer's profits must bear some relationship to the unlawful conduct-e.g., grounded in the benefit accruing to the defendant on account of its unlawful conduct. See Sands, Taylor & Wood v. The Quaker Oats Co., 34 F.3d 1340, 1349 (7th Cir. 1994). The trademark owner has the burden of proving that **lost profits are attributable** to the unlawful use of the mark. See Quick Technologies Inc. v. Sage Group PLC, 313 F.3d 338, 350 (5th Cir. 2003) (citing Texas Pig Stands, Inc. v. Hard Rock Cafe Intern., 951 F.2d 684, 696 (5th Cir. 1992)); see also A & H Sportswear Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197 (3d Cir. 1999).

Thus, even if CLM's trademark registration was found to be valid, and confusion was proven, CLM would not be entitled to profits, based on existing law.

9

In this case, the purchasers of the round towels in question were motivated by the opportunity of purchasing Jay Franco & Sons, Inc.'s towels which were attractive towels of high quality at the very favorable price afforded by Target's and/or Walmart's "discounts." To the extent that consumers were motivated by obtaining such a bargain, the fact that they were also obtaining "a genuine round towel" (allegedly owned by CLM Designs) was only an incidental factor in their purchase, or no factor at all. In other words, given the quality, attractiveness, and price of Jay Franco & Sons, Inc.'s towels, it cannot be concluded that Target and/or Walmart could not have sold them at the same price as CLM's round towels even if they contained no reference to "CLM." Since CLM is "only entitled to those profits attributable to the unlawful use of its mark," the facts of this case do not support awarding CLM lost profits. See Gucci America, Inc. v. Daffy's Inc., 354 F.3d 228 (3d Cir. 2003).

## IV. CONCLUSION

For the above reasons, CLM's trademark registration is invalid because it is functional and/or generic. Further, there can be no trademark infringement when there is no confusion, and here the towels sold by Jay Franco and its customers were prominently labeled with their respective registered trademarks as indicators of source. No judge or jury could reasonably conclude that a Towel with the famous Target "Bullseye" logo of concentric circles placed on the label for the Towel and on the Towel itself, was somehow made or sold by CLM. Finally, CLM is not entitled to an award of profits for the reasons stated.

# EXHIBIT C

JUN-29-2006  15:26        JENNER BLOCK LLP                                    P.02/02

# JENNER&BLOCK

June 29, 2006

Jenner & Block LLP          Chicago
One IBM Plaza               Dallas
Chicago, IL 60611-7603      New York
Tel 312 222-9350            Washington, DC
www.jenner.com

Elayna T. Pham
Tel  312 840-7633
Fax  312 840-7733
epham@jenner.com

**VIA FACSIMILE:  (732) 634-3511**
Ezra Sutton
EZRA SUTTON, P.A.
Plaza 9
900 Route 9
Woodbridge, New Jersey  07095

            Re:    Round Towel Infringement

Dear Ezra:

        We have been discussing your client's settlement offer with our client and we would like
to make a counteroffer.  Notwithstanding our disagreement with your arguments, we believe this
dispute can be amicably resolved without the necessity of litigation.

        As you discussed with my partner Ray Nimrod today, the parties have agreed to continue
negotiations with one another for a 30-day period following the making of the counteroffer.
Furthermore, during that period of negotiation, both parties have agreed not to file any lawsuits
against each other or any customers.

        Please indicate your agreement by signing below and returning this correspondence to us.
Ray Nimrod will contact you tomorrow morning to discuss this matter further.

                                        Very truly yours,

                                        Elayna T. Pham

AGREED:

_____                 _____
Ezra Sutton                             Dated
EZRA SUTTON, P.A.

                                                            TOTAL P.02

# EXHIBIT D

LAW OFFICES

# EZRA SUTTON, P. A.
### A PROFESSIONAL CORPORATION
PLAZA 9
900 ROUTE 9
WOODBRIDGE, NEW JERSEY 07095

EZRA SUTTON*
JOSEPH SUTTON**
ANTHONY M. MORANO*

*N.J. AND N.Y. BARS
**N.J. BAR AND N.Y. FEDERAL BARS

PATENTS
TRADEMARKS
COPYRIGHTS
LICENSING

(732) 634-3520
FAX: (732) 634-3511
www.ezrasutton.com

October 24, 2006

**VIA FAX (312-840-7733) AND MAIL**
Elayna T. Pham, Esq.
Jenner & Block, LLP
One IBM Plaza
Chicago, IL 60611-7603

   RE: Our File: FRANCO 4.0-002
    **Trademark Registration No. 1,502,261 on Round Towel**

Dear Ms. Pham:

  As we discussed by telephone, we found a recent decision from the Court of Appeals for the Sixth Circuit which is relevant to the issues in this case. The name of the case is <u>Fuji v. Pacific Bay,</u> which was decided on August 23, 2006 by the Court of Appeals. The decision can be found at 79 U.S.P.Q. 2d 1894 (Sixth Circuit 2006).

  In cancelling Fugi's trademark registration, the Court of Appeals made the following statements:

   When a utility patent expires, "there passes to the public the right to make the machine in the form in which it was constructed during the patent." <u>Singer Mfg. Co. v. June Mfg. Co.,</u> 163 U.S. 169, 185, 16 S.Ct. 1002, 41 L.Ed. 118 (1896). As an inescapable consequence of this right, a court may not prevent an individual skilled in the art of line guide manufacture from duplicating the specification disclosed in either the '027 or '504 patent and creating guides identical to the N and LR models. *See* 35 U.S.C. §112. Therefore, based solely upon our understanding of patent law, the district court was justified in <u>cancelling</u> Fugi's '505 [trademark] registration and dismissing its claims based upon its unregistered LR design.

Elayna T. Pham, Esq.
Jenner & Block, LLP
October 24, 2006
Page 2


If you have any comments on this decision, please let me know.

Sincerely,

EZRA SUTTON

ES:daw
cc: Mr. Joe N. Franco

# EXHIBIT E

# United States Patent [19]

## Ostrowski

[11] **Patent Number:**     **4,991,978**

[45] **Date of Patent:**     **Feb. 12, 1991**

[54] **TOWEL BAG COMBINATION APPARATUS**

[76] Inventor: **Michael J. Ostrowski,** 91 Old Toll Rd., West Barnstable, Mass. 02668

[21] Appl. No.: **465,809**

[22] Filed: **Jan. 16, 1990**

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 437,216, Nov. 16, 1989, abandoned.

[51] Int. Cl.⁵ ...................... B65D 30/10; B65D 33/02; B65D 33/12

[52] U.S. Cl. ............................................. 383/4; 383/6; 383/13; 383/76

[58] Field of Search ........................... 383/4, 76, 6, 13; 190/1; 428/66

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D. 128,122 | 7/1941 | Lewis . |
| D. 293,060 | 12/1987 | Botbol . |
| 791,677 | 6/1905 | Dowling ................................. 383/4 |
| 977,129 | 11/1910 | Reynolds ................................. 383/4 |
| 1,688,288 | 10/1928 | Rogers ................................. 383/4 |
| 2,344,010 | 3/1944 | Walsh ................................. 383/4 |
| 2,626,648 | 1/1953 | Anderson ................................. 383/4 |
| 2,803,845 | 8/1957 | Bradford . |

| | | |
|---|---|---|
| 3,346,155 | 10/1967 | Oechsle ................................. 383/13 |
| 3,967,668 | 7/1976 | Franco ................................. 383/4 |
| 4,337,812 | 7/1982 | Trinkner ................................. 383/4 |
| 4,794,029 | 12/1988 | Tennant et al. ................................. 383/4 |

*Primary Examiner*—Stephen P. Garbe
*Attorney, Agent, or Firm*—Richard P. Crowley

[57] **ABSTRACT**

A towel bag combination apparatus which in the open position is used for towel or beach-type purposes and in the closed position is an enclosed bag with a carrying strap. The towel bag combination apparatus comprises a circular fabric towel element with a reinforced peripheral web with draw holes in the web and a ring near the web, and with the bottom surface having a reinforced section and a loop secured thereto. The towel-bag apparatus also includes an elastic draw cord having a one and an other end and passing through the holes in the web and having the one and other end include a spring loaded clip. The draw cord permits the circular towel to move an open position for towel use and a closed bag use, the draw cord passing through the loop and with the spring loaded clip adapted to engage the ring so as to form a carrying strap for the towel bag combination apparatus in the closed position.

**7 Claims, 3 Drawing Sheets**





## FIG. I



FIG. 2

FIG. 3



**FIG.4**

4,991,978

**1**

## TOWEL BAG COMBINATION APPARATUS

### REFERENCE TO PRIOR APPLICATION

This application is a continuation-in-part application of U.S. S.N. 07/437,216, filed Nov. 16, 1989, now abandoned.

### BACKGROUND OF THE INVENTION

It is often desirable for use at the beach to have a towel fabric for drying purposes and to lay on and also to have an easily formed container or bag to carry items such as those for example employed at the beach. Therefore a combination towel-bag, which is simply constructed and easily adapted to move from between a towel-beach use and bag-containing use is desirable and further to have the bag include an easily adaptable carrying strap. Towel fabrics come in various sizes and shapes, and circular towel fabrics for example are shown in U.S. Pat. No. 2,803,845, issued Aug. 27, 1957 and U.S. Design Patent No. 293,060, issued Dec. 8, 1987. In addition, beach kits formed or having a particularly formed container are illustrated in U.S. Design Patent No. 128,122, issued July 8, 1941.

It is therefore desirable to provide for a towel-bag apparatus of simple design and construction and which is easily adapted to move between a towel or beach use in an open position and a tote bag in a closed position and which provides for a bag having an integrally formed shoulder or carrying strap therein.

### SUMMARY OF THE INVENTION

The invention relates to a towel-bag combination apparatus, which in the open position provides a towel for drying and beach purposes and in the closed position provides for an enclosed bag with a carrying strap.

The invention is directed to a towel-bag apparatus which is adapted to move easily between an open position wherein a generally circular fabric towel element provides a towel for drying purposes or to be laid on the beach for sunning purposes and to a closed or partially closed position with the employment of a draw cord on the generally circular towel element to provide an enclosed bag, and further with the draw cord also providing a carrying strap for the bag. In particular, the towel bag apparatus of the invention employs the generally circular fabric towel element, such as a terrycloth, having a reinforced peripheral web and a plurality of draw holes, such as of metal or plastic grommets, in the reinforced web. The circular towel element has a top surface and a bottom surface with the bottom surface having a generally centrally reinforced section which may be of another type cloth or a canvas or vinyl plastic section, but generally of a different material to give more color and support to the central portion of the circular towel element. The reinforced section may be of varying size, such as round, square or triangular, and also includes a loop or ring centrally disposed therein to provide a means to hook a spring-loaded clip therein or to pass through the draw cord to form a carrying strap for the bag. Also the bottom surface has, near the reinforced web, a drawstring loop gathering and a ring to attach a hook from a spring-loaded clip for carrying purposes.

The towel-bag apparatus also includes a draw cord means, such as a string, or more typically an elastic-type cord, having a one and an other end and passing through the holes in the reinforced web typically in

**2**

alternating fashion so as to permit the circular towel element to move between an open position for towel-beach use with the draw cord extended and in a relaxed position and a closed position wherein the reinforced web by means of the drawn draw cord is drawn inwardly to form a bag for use to place articles. The draw cord has a one and an other end which ends are generally secured together and includes a spring-loaded hook or clip at the one and other end so as to permit said clip in the closed position to engage either the loop either in the center of the reinforced center or alternatively, a ring secured near or adjacent the reinforced web so that the draw cord can form a carrying strap for a user when the towel bag is in the closed bag carrying position. The draw cord can be used as a shoulder or hand strap merely by securing the spring-loaded clip at the end of the draw cord to either the loop or the ring or the draw cord may even be shortened by just threading the draw cord through either the loop and/or the ring to form a double carrying strap.

The towel-bag apparatus may be quickly and easily placed into the closed position by drawing the draw cord and forming a carrying strap by hooking the end of the spring-loaded clip to either the central or peripheral loop.

The invention will be described for the purposes of illustration of only in connection with certain preferred embodiments; however, it is recognized that various changes, modifications, additions and improvements may be made by those persons skilled in the art, all falling within the spirit and scope of the invention.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of the towel-bag apparatus of the invention in a bag-carrying, closed position;

FIG. 2 is top plan view of the towel-bag apparatus of the invention in the open, towel-beach use position;

FIG. 3 is a side plan view of the towel-bag apparatus of FIG. 2; and

FIG. 4 is a bottom plan view of the towel-bag apparatus of FIG. 2.

### DESCRIPTION OF THE EMBODIMENTS

The drawings illustrate a towel-bag apparatus 10 of the invention which comprises a generally circular terrycloth towel fabric 12 having a diameter of 4 to 6 feet and a generally reinforced fabric or canvas peripheral 1″ to 1¼ webbing 14 which includes a plurality of equally spaced apart grommet holes 16, for example, spaced apart 5″ to 8″, about the periphery and which includes passing through the grommet holes an elastic draw cord 18 having a one and an other end and which is drawn together by a clasp 20 and which includes at the one and other end a spring-loaded hook or clip 22. The bottom surface of the towel element 12 includes secured thereto by an adhesive or sewn on a generally circular, centrally disposed reinforcing section 24 of 6″ to 18″ in diameter, such as of another or more canvas of different color than the fabric 12. Centrally positioned therein is a cloth loop 26 (diameter 2″ to 3″), for example, of nylon. Secured to the reinforced web section 14 and generally adjacent the outlet of the draw cord 18 is another closed metal ring 28, as illustrated in FIG. 4. It is desirable to provide for a soft fabric-type loop 26 rather than a metal loop so as to facilitate use of the generally circular element 12 as a towel.

4,991,978

**3**

FIG. 1 illustrates the towel-bag apparatus 10 in the bag position, that is, in the closed position, wherein the draw cord 18 has been pulled closed to form a bag-like enclosure with draw cord passed through the loop 26 and upwardly and connecting the ring 28 through the use of the spring loaded clip 22 so as to form a double draw cord 18 for the shoulder carrying of the bag. FIGS. 2–4 illustrate the towel-bag apparatus 10 in the open position wherein the top surface of the towel-bag apparatus may be spread out on the beach or for resting purposes and later for drying purposes as desired with the ring 28 and the soft nylon loop 26 on the bottom surface of the circular towel element so as not to interrupt the function of the towel for resting or towel purposes. The towel-bag apparatus 10 as illustrated thus provides for a use as a beach towel for resting and drying purposes and is readily convertible into an enclosed bag for container purposes with a shoulder carrying strap.

What is claimed is:

1. A towel-bag apparatus which is adapted to move between an open and closed position and which in the open position provides a towel suitable for drying and beach purposes, and in the closed position provides an enclosed bag with a carrying strap, and which towel-bag apparatus comprises in combination:

  a) a generally circular, terrycloth towel element having a reinforced peripheral web and a plurality of holes in the web and having a top surface and a bottom surface, the bottom surface having a generally centrally reinforced section;

  b) a loop means generally centrally secured to the the reinforced section;

  c) a ring means secured to the reinforced peripheral web; and

  d) a draw cord means having a one and an other end, the draw cord passing through the holes in the reinforced web of the towel element, so as to permit the circular towel element to move between an open position for towel or beach with the draw cord in a relaxed, extended position use and a closed position for bag use with the draw cord in a drawn position, the draw cord means including a clip-type closure means at the one end and the other end so as to permit the said clip-type enclosure means to engage the loop means or the ring in

**4**

the closed position to form a carrying strap for the towel-bag apparatus.

2. The towel-bag apparatus of claim 1 wherein the generally circular towel element has a diameter of from four to six feet and wherein the reinforced section is generally circular and has a diameter of from about six to eighteen inches.

3. The towel-bag apparatus of claim 1 wherein the towel element comprises a terrycloth fabric and the central reinforced section is a non-terrycloth fabric.

4. The towel-bag apparatus of claim 1 wherein the loop means comprises a cloth loop means sewn to the reinforced section of the towel element.

5. The towel-bag apparatus of claim 1 wherein the ring means comprises a metal ring means securely fastened to the reinforced web adjacent the one and other end of the draw cord means.

6. The towel-bag apparatus of claim 1 wherein the enclosure means comprises a spring loaded clip at the one and the other end of the draw cord means.

7. A towel-bag apparatus adapted to be placed in an open position which provides a towel suitable for beach or drying purposes and in the closed position provides an enclosed bag with a carrying strap, and which towel-bag apparatus comprises in combination:

  a) a generally circular, terrycloth towel element having a diameter of about 4 to 6 feet and having a reinforced peripheral web edge and a plurality of holes in the web and having a top surface and a bottom surface, the bottom surface having a generally circular reinforced section of a non-terrycloth-type material and having a cloth loop centrally secured to the reinforced section and a ring secured to the reinforced peripheral web; and

  b) an elastic-type draw cord means having a one and the other end and passing through the holes in the web in an alternating fashion so as to permit the circular towel element to move between the open position for towel-beach use and a closed position for bag use, the draw cord means including a spring loaded clip at the one and the other end so as to permit the draw cord means to pass through the loop and the spring loaded clip to engage the ring in the closed position to form a carrying strap for the towel-bag apparatus in the closed position.

*  *  *  *  *

# United States Patent [19]

## Tennant et al.

[11]  **Patent Number:**  **4,794,029**

[45]  **Date of Patent:**  **Dec. 27, 1988**

[54]  **TOWEL THAT CONVERTS INTO A BAG**

[76]  Inventors: **Lynne H. Tennant; Ashley A. Herrin,** both of 244 Thirteenth St., NE., #101, Atlanta, Ga. 30309; **Garrett L. Simmons,** 876 Broadway, Fourth Floor, New York, N.Y. 10003

[21]  Appl. No.: **18,358**

[22]  Filed: **Feb. 24, 1987**

[51]  Int. Cl.⁴ ........................ A45C 9/00; A47G 9/00
[52]  U.S. Cl. ................................ **428/101;** 5/417; 190/1; 383/4
[58]  Field of Search ............... 2/49 R, 69; 5/417, 418, 5/419, 420; 190/1; 383/4; D6/595, 596, 603; 428/78, 79, 101, 102

[56]  **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 889,073 | 5/1908 | Walbridge | 2/49 R |
| 2,299,232 | 10/1942 | Heyser | 2/49 R |
| 2,442,293 | 5/1948 | Hudson | 2/49 R |
| 2,731,997 | 1/1956 | Muth et al. | 383/4 |
| 2,781,811 | 2/1957 | Dilar et al. | 428/52 X |
| 3,016,544 | 1/1962 | Pinkney | 2/49 R |
| 3,646,896 | 3/1972 | Derujinsky et al. | 5/419 X |
| 4,195,378 | 4/1980 | Parker | 5/419 |
| 4,278,719 | 7/1981 | Sarnecki | 428/78 |
| 4,337,812 | 7/1982 | Trinkner | 206/541 X |
| 4,669,128 | 6/1987 | Furgang | 2/69 |
| 4,703,528 | 11/1987 | Rolle | 190/2 X |
| 4,709,430 | 12/1987 | Nicoll | 5/417 |

*Primary Examiner*—Henry F. Epstein
*Attorney, Agent, or Firm*—Robert W. Fiddler

[57]  **ABSTRACT**

A circular section of woven terry fabric, with a circular section of woven nylon fabric having precisely one-fourth the area of the circular woven terry fabric attached to the inferior plane of the circular woven terry fabric, which has four sections of woven terry fabric cut on the bias and of equal lengths and widths attached along the perimeter on both the superior and inferior planes to form a casing encompassing a cotton cord or drawstring thereby allowing conversion of the fabrics into a bag.

**10 Claims, 5 Drawing Sheets**



*FIG. 1*



FIG. 2



**U.S. Patent**    Dec. 27, 1988    Sheet 3 of 5    **4,794,029**

*FIG. 3*



*FIG. 4*



**U.S. Patent**   Dec. 27, 1988   Sheet 5 of 5   **4,794,029**

*FIG. 5*



4,794,029

**1**

## TOWEL THAT CONVERTS INTO A BAG

### BRIEF SUMMARY OF THE INVENTION

It is an object of this invention to provide a circular section of woven terry fabric that when used as a towel for sunbathing requires no repositioning toward the changing angle of the sun. It is a further object of this invention to provide a cotton cord or drawstring contained in four sections of woven terry fabric casing cut on the bias and attached to the perimeter of the circular section of woven terry fabric on both the superior and inferior planes permitting the conversion of the materials into a bag. In addition, a circular section woven nylon fabric having precisely one-fourth the area of the circular woven terry fabric is attached to the inferior plane of the circular woven terry fabric, providing added support and durability to the weight-supporting, inferior portion of the bag. The circular shape of the invention to form a half-circle may also be wrapped around the human body as an absorbent, heat-retaining garment.

### BRIEF DESCRIPTION OF DRAWINGS

FIG. 1 A superior perspective view of the invention showing the circular section of woven terry fabric 1, the casing composed of woven terry fabric 2, and the cotton cord or drawstring 3.

FIG. 2 An inferior perspective view of the invention showing the circular section of nylon fabric 4.

FIG. 3 Cross section of a lateral view of the invention.

FIG. 4 A superior perspective view of the invention showing the cotton cord or drawstring 3 being extracted and pulled from the casing 2 as the casing 2 and circular woven terry fabric 1 begin to constrict and form a bag.

FIG. 5 An anterior perspective view of the invention showing the cotton cord or drawstring 3 fully extended from the casing 2 and the circular woven terry fabric 1 having formed a bag with the circular section of woven nylon fabric 4 supporting the inferior portion of the bag.

### DETAILED DESCRIPTION

In accordance with a preferred embodiment of the invention, a towel-bag contruction is formed by a circular towel of woven terry fabric 1, four sections of woven terry fabric casing 2 cut on the bias and of equal lengths and widths, a cotton cord or drawstring 3, and a circular section of woven nylon fabric 4 having precisely one-fourth the area of the circular section of woven terry fabric 1. This construction provides a towel that when used for sunbathing requires no repositioning toward the changing angle of the sun and may also be converted into a bag for transporting various and sundry sunbathing articles, as well as used as an absorbent, heat-retaining garment.

The circular shape of the towel allows for the repositioning of the human body toward the changing angle of the sun while the towel remains stationary, thereby eliminating the need for continual repositioning of the towel as with the conventional rectangular sunbathing towel.

In addition, the towel-bag construction permits ready conversion of the circularly shaped towel into a bag (FIG. 5), a provision unavailable with a conventional rectangular sunbathing towel. Furthermore, the circular section of woven nylon fabric 4 attached equidistant

**2**

to the inferior plane of the circular section of woven terry fabric 1 of the towel provides added support and durability to the weight-supporting, inferior portion of the bag.

Also, the circular shape of the towel folded to create a half-circle and utilized as a garment permits greater conformity to the human body than that of the conventional rectangular sunbathing towel. The double thickness of the fabric allows superior body heat retainment and moisture absorbency as well.

In the making of the structure of this invention, four sections of woven terry fabric are cut on the bias to better conform to the arced perimeter of the circular woven terry fabric 1 measuring sixty inches in diameter. Each of the four sections of woven terry fabric casing 2, measuring forty-seven and three quarters inches by six inches, is hemmed three quarters of an inch on each of the four sides, employing twenty stitches of sewing thread per inch. One of the longer sides of each four sections of woven terry fabric casing 2 is sewn, employing twenty stitches of sewing thread per inch, from the edge one and one-half inches into the perimeter of the inferior plane of the circular section of woven terry fabric 1, leaving one and one-half inches between each section of woven terry

In FIG. 3, the sections of woven terry fabric casing 2 are brought up from the inferior plane and over the perimeter of the circular woven terry fabric 1 to the superior plane of the same. The remaining longer sides of each section of woven terry fabric casing 2 are sewn, employing twenty stitches per inch, from the edge one and one-half inches into the perimeter of the superior plane of the circular section of woven terry fabric 1. The attached woven terry fabric casing 2 has an elevation of one and one-half inches from the inferior plane of the circular section of woven terry fabric 1.

The cotton cord or drawstring 3, one hundred and eighty-eight inches in length and one-quarter of an inch in diameter, is threaded through each of the four sections of woven terry fabric casing 2, tying the ends of the cotton cord or drawstring 3 together.

The circular section of woven nylon fabric 4 measuring fifteen and three-quarters inches, allowing for three-quarters of an inch hem around the perimeter of the same, is sewn employing twenty stitches of sewing thread per inch onto the inferior plane of the circular woven terry fabric 1 in a position equidistant to the perimeter of the same (FIG. 2).

The transformation (FIG. 4) of the towel from the flat circular section of woven terry fabric (FIG. 1) into a bag commences as the cotton cord or drawstring 3 is extracted and pulled outwardly from each of the four openings of the woven terry fabric casing 2, as the circular woven terry fabric 1 and the woven terry fabric casing 2 constrict. Each of the four lengths of protracted cotton cord or drawstring 3 are fully extended from the woven terry fabric casing 2, raised to a vertical position and combined, having formed a bag (FIG. 5). The combined lengths of the cotton cord or drawstring 3 are clutched providing a method of transporting the bag.

What is claimed is:

1. A towel-bag construction comprising: a non-rectangular towel;

a casing formed at the perimeter of said towel;

a cord threaded through said casing; and

4,794,029

3

a section of relatively non-stretchable fabric of a shape geometrically similar to that of said towel attached with its edges equidistant from the edges of said towel.

2. A towel-bag construction as set forth in claim 1 wherein said towel is circular in shape, whereby a user while sunbathing may reposition his or her body towards the changing angle of the sun while the towel remains stationary.

3. A towel-bag construction as set forth in claim 1 in which said casing is formed of the material of said towel.

4. A towel-bag construction as set forth in claim 1 in which said casing is formed of a plurality of separated parts, with said cord exposed between said parts.

5. A towel-bag construction as set forth in claim 4 in which said cord is continuous and may be drawn up to bring the edges of said towel together to form a bag.

6. A towel-bag construction as in claim 3, in which said casing is formed of at least three separated parts,

4

with said cord extending continuously through each casing part and exposed for manual gripping at the separation between said casing parts.

7. A towel-bag construction as in claim 1 in which said section of non-stretchable fabric is formed of a woven nylon fabric, relatively non-absorbent as compared to the towel.

8. A towel-bag construction as in claim 7 in which said section of non-stretchable fabric is one quarter the area of said towel.

9. A towel-bag construction as in claim 1 in which said casing is formed of a woven fabric cut on the bias.

10. A towel-bag construction comprising: a circular towel of woven absorbent fabric; a central circular section of relatively non-absorbent fabric material of an area one quarter the area of said towel; a plurality of spaced casing sections formed along the edge of said towel; and a continuous cord extending through said casing sections.

*  *  *  *  *

Aug. 27, 1957          M. P. BRADFORD          2,803,845
CIRCULAR TOWEL

Filed June 14, 1954



INVENTOR

Marjorie P. Bradford

BY Kimmel + Crowell

ATTORNEYS

# United States Patent Office

**2,803,845**
Patented Aug. 27, 1957

**1**

**2,803,845**

**CIRCULAR TOWEL**

Marjorie Paschall Bradford, Dubuque, Iowa

Application June 14, 1954, Serial No. 436,483

1 Claim.  (Cl. 15—209)

This invention relates to towels.

An object of this invention is to provide a towel which is constructed in circular form and includes means for suspending the same from a towel rack.

Another object of this invention is to provide a towel of the bath type having great area and including an elastic suspension element so that the towel may be disposed in a convenient position for use by small children.  It is well known that small children are very careless in the use and handling of towels, and when they are through with the towels they either drop them on the floor or carelessly put the towels back on the rack.  The result is that the bathroom is littered with towels which could be used again if carefully handled.

It is another object of this invention to provide an improved towel construction including an elastic strap or suspension element which is engaged about the towel rack so that pull on the towel during the use thereof will not place a strain on the towel rack.

A further object of this invention is to provide a towel of circular or disc shape with a central reinforcing disc and a pair or crossed straps through which an elastic band is extended so that no undue strain will be exerted on the towel or the rack.

With the above and other objects in view, my invention consist in the arrangement, combination and details of construction disclosed in the drawing and specification, and then more particularly pointed out in the appended claims.

In the drawing:

Figure 1 is a plan view of a towel constructed according to an embodiment of this invention showing the device in flat form.

Figure 2 is a detail side elevation of the towel in suspended form.

Figure 3 is a fragmentary plan view on an enlarged scale of the central portion of the towel.

Figure 4 is a fragmentary sectional view taken on the line 4—4 of Figure 1.

**2**

Referring to the drawing the numeral 10 designates generally a circular fabric which is hemmed as at 11 at its outer margin.  The fabric 10 is constructed of conventional toweling such as used for bath towels and the body 10 in the center thereof has stitched thereto a disc-shaped reinforcing member 12.  A pair of crossed straps 13 and 14 extend over the disc 12 and the outer ends of the straps 13 and 14 as shown in Figure 4 are extended about the outer margin of the disc 12 and then extended inwardly beneath the disc 12.  The disc and the straps 13 and 14 are stitched to the body 10 as by stitching 15.

In order to provide a means whereby the circular body may be suspended from a towel rack bar 16, I have provided an elongated elastic strap 17.  The strap 17 is extended beneath the crossed portions of the straps 13 and 14 as shown in Figure 1 and the ends of the elastic strap or band 17 are then provided with rings 18 and 19.  At least one of these rings such as ring 19 is of the separable type so that ring 19 may be locked to ring 18 with the strap or band 17 extended over and about the supporting bar 16.

The circular form of the towel body 10 provides a relatively large area of toweling for use by small children and by suspending the body 10 with an elastic strap or band the tapes 13 and 14 will not be placed under undue tearing strain if the towel is pulled laterally or downwardly with respect to the rack bar 16.

When the body 10 is being laundered, the elastic strap 17 may be removed from the towel so that the elastic strap will not deteriorate too quickly by reason of becoming wet.

What is claimed is:

In combination, a towel and suspension means therefor comprising, a circular fabric body, a reinforcing disc for said body, a pair of crossed straps positioned on said disc with the ends of said straps extending under the edge of said disc, stitching extending through said body, said disc and said straps securing said body, said disc and said straps together, with said disc disposed centrally of said body, an adjustable elastic suspension member extending under said crossed straps for suspending said body, and means joining the opposite ends of said elastic suspension member to form a closed loop.

**References Cited in the file of this patent**

UNITED STATES PATENTS

| | | |
|---|---|---|
| 1,351,311 | Virneburg _____ | Aug. 31, 1920 |
| 1,478,112 | Flather _____ | Dec. 18, 1923 |
| 2,204,947 | Apfelbaum _____ | June 18, 1940 |
| 2,288,469 | Lookholder _____ | June 30, 1942 |
| 2,754,532 | Kanehl _____ | July 17, 1956 |

Jan. 24, 1956    E. A. MUTH ET AL    2,731,997

COMBINED BAG AND FLAT CLOTH ARTICLE

Filed Sept. 8, 1952    2 Sheets—Sheet 1



INVENTORS
*Esther Aldean Muth*
BY *Beatrice J. Mills*

Jan. 24, 1956          E. A. MUTH ET AL          2,731,997

COMBINED BAG AND FLAT CLOTH ARTICLE

Filed Sept. 8, 1952                    2 Sheets—Sheet 2



Fig. 10

Fig. 11

Fig. 12

Fig. 13

Fig. 14

Fig. 15

Fig. 16

Fig. 18

Fig. 17

Fig. 19

INVENTORS
Esther Aldean Muth
BY Beatrice J. Mills

Wright Arnold
ATTORNEY

# United States Patent Office

2,731,997
Patented Jan. 24, 1956

1

2,731,997

COMBINED BAG AND FLAT CLOTH ARTICLE

Esther Aldean Muth, Bellevue, and Beatrice J. Mills, Seattle, Wash.

Application September 8, 1952, Serial No. 308,326

1 Claim.  (Cl. 150—11)

Our invention relates to a combined handbag and flat cloth article.

More particularly, our invention relates to a flat cloth which may be used as such and which may be pursed to form an attractive handbag.

An object of this invention is to provide an article of this nature which is capable of being put to a useful purpose when in a flat condition and which may be quickly and easily pursed to form a neat and attractive bag.

Another object is to provide a combined bag and flat cloth article which is versatile and capable of embodiment in numerous different forms for numerous different uses and which, for instance, may take the form of a combined beach bag and towel, or a combined sewing bag and sewing apron, or a combined bridesmaid's bag and hat, or a combined baby bag and baby blanket, or which may take various other forms usable in activities where there is a need for both a flat cloth article and a bag; said enumeration is by way of illustration and not limitation.

Another object is to provide a combined bag and flat cloth article in the form of a circular piece of cloth having associated therewith sling strap means by which it may be pursed to form a bag and by which it may be carried, and having means to receive and releasably hold a centrally positioned, removable plate of material of relatively stiff material which cooperates in forming a bottom member for the bag, and further cooperates in holding various small personal belongings and articles related to the use for which the bag is intended.

Another object of this invention is to provide a combined bag and flat cloth article which is provided with means to receive and releasably hold an inner bag in which articles may be contained.

The above mentioned general objects of this invention, together with others inherent in the same, are attained by the means illustrated in the accompanying and following drawings, the same being preferred exemplary forms of embodiment of the invention, throughout which drawings like reference numerals indicate like parts:

Figure 1 is an inside plan view of a circular towel and beach bag made in accordance with this invention, showing the same opened out flat and showing a closed and folded inner bag secured therein and showing by dotted lines a tie and sling strap and sling strap receiving loops therefor.

Fig. 2 is a view similar to Fig. 1 showing the outer side of the beach bag and showing by dotted lines hanger straps for receiving and holding an inner bag.

Fig. 3 is a perspective view of the towel and beach bag shown in Figs. 1 and 2 as it may appear when pursed and closed by the use of the sling strap to form a beach bag.

Fig. 4 is an opened up view of a detachable inner bag used in this beach bag and which cooperates in forming the bottom of the beach bag.

Fig. 5 is a sectional view of said inner bag taken substantially on broken line 5—5 of Fig. 4.

2

Fig. 6 is a view partly in section and partly in plan taken substantially on broken line 6—6 of Fig. 5 showing a mirror in the bottom of the inner bag.

Fig. 7 is a plan view of a fragment of a towel and beach bag showing modified means for receiving and holding an inner bag which is provided with a relatively stiff bottom member.

Fig. 8 is a fragmentary sectional view of an inner bag showing modified means for securing the pliable walls of the inner bag to a relatively stiff bag bottom member.

Fig. 9 is a somewhat diagrammatic view illustrating how this towel and beach bag may be worn on the shoulders as a cape.

Fig. 10 is an inside plan view of a circular sewing bag and apron made in accordance with this invention, showing the same opened out flat as it may appear when it is to be used as a sewing apron and showing by dotted lines a combined sling strap and apron string member and sling strap receiving loops.

Fig. 11 is a perspective view of the article shown in Fig. 10 as it may appear when it is pursed and gathered to form a bag.

Fig. 12 is a view partly in section and partly in elevation showing means which may be used to fasten spools of thread, yarn and the like to a relatively stiff plate member which cooperates in forming the bottom of the bag.

Fig. 13 is a sectional view showing modified means for securing a bag and apron forming member of cloth to a plate member which serves as a bag bottom and a mounting plate for articles used in sewing and like activities.

Fig. 14 is a plan view of a circular cloth member made in accordance with this invention and used as a bridesmaid's bag and hat, and parts on the under side of said circular cloth member being shown by dotted lines.

Fig. 15 is a perspective view of said bridesmaid's bag showing the same pursed and closed and illustrating how a corsage of flowers may be carried therein.

Fig. 16 is a detached perspective view showing an inner bag used in the bridesmaid's bag shown in Figs. 14 and 15, parts being broken away.

Fig. 17 illustrates a manner in which the circular cloth member shown in Fig. 14 may be used as a hat.

Fig. 18 is a plan view of a combined circular blanket and baby bag made in accordance with this invention, showing the upper side of the same as it may appear when it is opened out flat and has a circular piece of waterproof material applied thereto and showing parts by dotted lines.

Fig. 19 is a sectional view on a larger scale than Fig. 18, showing an inner bag which may be used with the cloth member shown in Fig. 18 when the circular waterproof material is detached and the cloth member is pursed to form a bag.

Figs. 1 to 7, inclusive, show a combined towel and beach bag comprising a circular cloth member 25 of material, such as terry cloth, suitable for use as a towel, preferably about thirty-six inches in diameter, and having a peripheral binding 26 to reinforce and strengthen the same. Two spaced apart, parallel hanger straps 27, preferably of resilient material, such as elastic or woven fabric cut on the bias, are provided on one side of the cloth member 25 at substantially equal distances on opposite sides of the center of said cloth member. The respective end portions of each hanger strap 27 are attached to the cloth member 25 as by sewing or stitching 28 and the intermediate part of each strap 27 between the end stitching 28 is loose and free from the cloth member 25 so that parts which are to be releasably and removably attached to the cloth member 25 may be inserted under the hanger straps 27 between said straps and the cloth member 25.

3

An inner bag 29, shown detached in Figs. 4 and 5, is adapted to be held by the hanger straps 27. Preferably the inner bag 29 is formed of waterproof pliable material, such as thin, durable plastic sheeting, made into tubular form and having one end thereof secured, by any suitable means, such as thumbtacks 30, to a bottom plate 31 of relatively stiff, nonflexible, lightweight material, such as wood. The plate 31 thus forms a bottom for the inner bag 29. The plate 31 may be circular, as indicated in Fig. 1, or it may be non-circular in outline. A receptacle 32 for small articles, such as a ladies' purse, compact, handkerchief, and the like, is formed by doubling a piece of pliable material and securing the edge of the same to the top edge of the inner bag. Preferably this purse receptacle 32 is made from the same pliable waterproof material as the inner bag 29 and is tubular in shape and is open at one end so small articles may be readily stuffed into it and removed from it. This keeps the small articles where they are readily accessible and protects them from contact with other articles in the bag.

The inner bag 29 is attached to the cloth member 25 by inserting the edges of the cloth member 25 under the hanger straps 27 as shown in Fig. 1. The inner bag 29 may be used as a receptacle for a damp bathing suit and for any other similar articles. The receptacle 32, with purse and other articles therein, together with the top end portion of the inner bag 29, may be folded over and tucked under one of the hanger straps 27, see Fig. 1. The hanger straps thus removably attach the inner bag 29 to the center of the cloth member 25 and they also serve to hold the inner bag 29 and purse receptacle 32 closed. The disc 31 serves as a bottom for the inner bag 29 and also serves as a bottom for the inner bag when the cloth member 25 is pursed to form an outer bag as hereinafter explained. Preferably a mirror 33 is secured to the top side of the bottom disc 31 so that the disc 31 protects the mirror 33 from getting broken.

A plurality of radially disposed sling strap receiving loops 34 are secured in a circular path to the opposite side of the cloth member 25 from the hanger straps 27. Preferably the outer ends of these sling strap receiving loops 34 are spaced inwardly about four inches from the periphery of the cloth member 25. A sling strap 35, preferably of endless belt form as shown in Figs. 1 and 2, has one lap thereof passed through several of the sling strap receiving loops 34. The sling strap 35 has its two laps or side by side parts sewed or otherwise secured together at a location indicated by 36 to leave at one side of the location 36 a shorter sling strap loop 37, preferably about twelve inches long and at the other side of the location 36 a longer sling strap loop 38, preferably about twenty-six inches long. The longer sling strap loop 38 has one lap thereof threaded through and permanently engaged with preferably two or more contiguous sling strap receiving loops 34. The hanger straps 27 serve as a convenient means by which the circular cloth member may be hung up. The plate 31 serves as a bag forming bottom plate and forms a bottom for both the outer bag and the inner bag.

Fig. 8 shows modified means for attaching the lower end portion of an inner bag 29a to a relatively stiff bottom member 31a. This means comprises a hoop 39 which fits like an embroidery hoop over the circumferential portion of the bottom member 31a and securely clamps the marginal portion of the inner bag 29a to the bottom member 31a.

Fig. 7 shows modified means which may be used instead of the hanger straps 27 to releasably attach an inner bag, such as the bag 29 of Figs. 1, 4 and 5, to a cloth member 25a which is similar to the cloth member 25. This modified means comprises two approximately semi-circular cloth hanger pieces 40 secured by marginal stitching 41 to the central portion of the cloth member 25a. The straight edges of the hanger pieces 40 preferably have bindings or facings 42 and these straight edges are spaced

4

apart, as shown in Fig. 7, to facilitate the insertion under and the release from the hanger pieces 40 of a relatively stiff bottom disc of an inner bag 42a like the bag 29 with disc 31 shown in Figs. 4 and 5.

When the cloth member 25 and inner bag 29 and associated parts are to be used as a beach bag, the inner bag 29 is packed with desired articles and inserted under the hanger straps 27, as shown in Fig. 1. The longer loop 38 of the sling strap 35 is threaded through the remaining sling strap receiving loops 34, that is the loops 34 from which it is shown disengaged in Figs. 1 and 2, the cloth member 25 is pursed and the outer end portion of the longer loop 38 of said sling strap is passed through the portion of said longer sling strap loop 38 adjacent to the securing means 36. This leaves the shorter sling strap loop 37 and the outer end portion of the longer sling strap loop 38 protruding about equal distances from the bag, as shown in Fig. 3, so that the bag may be conveniently carried on the arm by these loops. The inner bag 29 may be readily engaged under or disengaged from the hanger straps 27 either while the cloth member 25 is spread out flat as shown in Fig. 1 or while said cloth member is pursed but not entirely closed. Access to the inner bag 29 and receptacle 32 may be readily had through the open upper end of the outer bag formed by the pursed cloth member 25. All of the articles which a bather uses at the beach may be readily carried in this beach bag.

When the inner bag 29 is removed and the cloth member 25 opened out it may be used as a towel or a pad or pillow to recline on, or it may be thrown over the shoulders as a cape as illustrated in Fig. 9. Also, when the inner bag 29 is detached, the cloth member 25 can be laundered or dry cleaned in the usual way.

A wet bathing suit or like article may be taken care of by placing it in the waterproof inner bag 29. This allows the user to place other articles in the inner bag 25 without having them in contact with the wet articles.

Figs. 10, 11 and 12 show a combined sewing apron and sewing bag made in accordance with this invention. This sewing apron and sewing bag comprises a circular cloth member 45 having hanger straps 46 and sling strap receiving loops 47, all corresponding to parts 25, 27 and 34, respectively, of Figs. 1 and 2. An endless belt type sling strap 48, similar to previously described sling strap 35, has its two laps sewed or otherwise fastened together, as by stitching 49, to form a shorter sling loop 50 and a longer sling loop 51. One lap of the longer sling loop 51 passes through and is permanently engaged with preferably at least two of the sling strap receiving loops 47 adjacent the top edge of the apron and the sling strap 48 functions as apron string means to be tied about the waist of the user and to hold the cloth member 45 when it is worn as an apron. Preferably a suitable binding is provided on the periphery of the cloth member 45. Also, preferably two pockets 52 are provided on the outer side of the cloth member 45 to receive and hold various articles used by a seamstress, such as scissors 53a, darning yarn 54, and like articles. Some of these articles are attached to the cloth member 45 as by relatively long ribbons or tapes 55 so they will not become permanently separated from the apron.

In the form of this invention shown in Figs. 10, 11 and 12 the inner bag is dispensed with a flat mounting board 56 of stiff material, similar to the bottom plate 31 of Figs. 5 and 6, preferably about eight or nine inches across, is used as a mounting means for spools of thread 57 and spools of yarn 58 and other articles. The mounting board 56 may be circular or it may be of a non-circular outline. Said mounting board 56 is removably attached to the cloth member 45 by inserting the edge portions of the same under the hanger straps 46 as shown in Fig. 10. The spools of thread 57, see Fig. 12, may be attached to the mounting board 56 by driving staples 59 into the board 56, passing a thread like piece

2,781,997

5

of rubber or elastic material 60 through each staple and through the axial bore 61 in a spool and through a button 62 which rests on the top or outer end of the spool, and tieing or securing the two ends of the elastic material together. This attaches each individual spool of thread 57 to the mounting board 56 by an elastic member 60 which will stretch and allow the spool of thread 57 to be handled freely in obtaining thread therefrom and which will snap the spool of thread back into its proper position when it is released.

The spools of yarn 58 are illustrated in Fig. 12 as being attached to the mounting board 56 by a thread like elastic connector member 63 which is common to a plurality of these spools. The elastic connector member 63 has one end portion thereof secured to a staple 59 and thence it passes out and back through two spaced apart holes 64 in the cardboard top members 65 of a spool of yarn 58, thence toward the board 56, and under the ends of two spools of yarn 58, thence through another staple 59, and out and back through two spaced apart holes 64 in the cardboard top member 65 of the next adjacent spool of yarn 58 and continues in this manner to the last spool of yarn 58 where the other end portion of the elastic member 63 is fastened to another staple. Obviously either type of elastic fastening means just hereinbefore described may be used in connection with the spools 57 and 58.

Other articles in addition to the spools 57 and 58 may be supported on the board 56, a pin cushion 69, a needle sharpener 66 and a thimble holder 67 being shown in Fig. 10.

Fig. 13 shows a modified means for securing a cloth member 45a to a disc shaped mounting board 56a. The cloth member 45a corresponds to the cloth member 45 except that hanger straps are omitted therefrom, and the disc shaped mounting board 56a corresponds to the mounting board 56. The securing means shown in Fig. 13 consist of a hoop 68. The cloth member 45a is drawn under the mounting board 56a and the hoop 68 is then pressed onto the mounting board 56a over the cloth member 45a so as to releasably clamp and hold the cloth member 45a and the mounting board 56a together.

The cloth member 45, when in the flat condition shown in Fig. 10, may be worn as a sewing apron or may be spread or hung on any suitable support and used while sewing, mending or darning. When the cloth member 45 is not being used as a sewing apron the sling strap 48 may be threaded through the remainder of the strap receiving loops 47 and through its own longer sling loop 51 and the cloth member 45 may be pursed to form a bag, as shown in Fig. 11. This bag is large enough to accommodate the articles which are attached to the front of the cloth member 45 and also to hold an ample supply of articles to be sewed, mended or darned, and such other small items as the user wishes to place in the bag. A person wearing the apron can get up and move around without displacing or disarranging or losing the articles attached to said apron.

Figs. 14, 15 and 16 show a combined evening or bridesmaid's bag and hat made in accordance with this invention. This bridesmaid's bag and hat comprises a circular cloth member 70 having hanger straps 71 and sling strap receiving loops 72 and a sling strap 73 all of a form hereinbefore described but which are of smaller size than the previously described corresponding parts. An inner bag 74 with non-flexible bottom plate 75 and mirror 76 and purse compartment 77 is provided for engagement with the hanger straps 71 and is used to receive articles carried by the user in a manner similar to the previously described inner bag 29. Preferably the cloth member 70 is about eighteen inches in diameter and the bottom plate 75 is from four to five inches across. The cloth member 70 is preferably made from good quality net material and has a peripheral binding 78 which

6

may be of taffeta to provide a rather stiff border which will tend to form in loops rather than in sharp folds when the cloth member 70 is pursed. When the cloth member 70 is partially gathered by partially tightening and tying the sling strap 73 in some, but not all of the sling strap receiving loops 72, then it may be worn as a bridesmaid's hat, as illustrated in Fig. 17. When the cloth member is pursed as shown in Fig. 15 and is carried on the arm, as it may be in dancing, it provides a very convenient means for receiving and carrying, and at the same time displaying a corsage of flowers 79 with the stems inserted in the bag and the flowers nestling in the top of the bag.

Figs. 18 and 19 show a combined baby blanket and baby bag made in accordance with this invention. This blanket and bag comprises a circular blanket or cloth member 80, preferably from thirty-six to forty inches in diameter. The cloth member 80 has a peripheral binding 81 and has two hanger straps 82 and a plurality of sling strap receiving loops 83 with which a sling strap 84 engages. The parts 80 to 84, inclusive, are respectively similar to the hereinbefore described parts 25, 26, 27, 34 and 35 and are used in the same manner. The side of the cloth member 80 which is innermost when the cloth member 80 is pursed to form a bag. A circular sheet 85 of waterproof material is detachably secured, as by snap fasteners 86 to this side of the cloth member 80 when said cloth member 80 is to be used as a blanket on which a baby is to be placed or in which the baby is to be wrapped. The hanger straps 82 are secured to the side of the cloth member 80 which is uppermost in Fig. 18 and, except within the boundaries of a broken away portion of the sheet 85, these hanger straps are shown dotted in Fig. 18. The sling strap receiving loops 83 and sling strap 84 are on the lowermost side of the cloth member 80 in Fig. 18 and are shown dotted.

An inner bag 87, Fig. 19, having a relatively stiff flat bottom member 88 and a receptacle 89 for small articles is provided for use with the cloth member 80. Preferably the inner bag 87 is made of waterproof material and preferably it has at least two smaller foldable waterproof bags 90 and 91 attached to the flat bottom 80 thereof. One of the smaller bags 90 or 91 will ordinarily be used to receive a baby's bottle and the other smaller bag may be used to receive damp articles and thereby prevent them from contacting other articles in the bag. The remainder of the space within the inner bag and the space in the pursed cloth member 80 around the outside of and above the inner bag 87 may be used as a receptacle for other articles to be worn or used by the baby.

The hanger straps 27 in Figs. 1 and 2 and the corresponding hanger straps in Figs. 10, 14 and 18 also serve as a convenient means by which the circular cloth members with which they are connected may be hung up when the bag forming bottom plates, such as plate 31, Fig. 5, and plate 56, Fig. 10, are detached from these hanger straps. The inner bags, such as bag 29 of Figs. 1 to 5, serve as means supporting and shaping the outer bag which is formed by pursing the circular cloth members around said inner bags.

Obviously changes may be made in the form, dimensions and arrangement of parts of this invention, without departing from the principle thereof, the above setting forth only preferred forms of embodiment.

We claim:

A combined bag and flat cloth article comprising a circular cloth member having a top and bottom side; two parallel spaced apart hanger straps of equal length each positioned the same distance as the other on opposite sides of the center of the top side of said circular cloth member and having means securing the end portions of said straps to said cloth; a plurality of sling strap receiving loops secured to the bottom side of said cloth member in a circle positioned both in spaced relation to the periphery of said cloth member and to each other thereby pro-

2,781,997

### 7

viding segments of said circular cloth member between said spaced apart loops for adjusting the bag volume to varying volumes to be carried; a sling strap slidably engaged within said sling strap receiving loops which strap, when pulled, purses the engaged portions; and a circular bottom plate of relatively stiff material releasably held in the center of said cloth member by said hanger straps, said plate giving uniformity of shape to the cloth member as a bag when the sling strap is in pursing position.

### 8

References Cited in the file of this patent

UNITED STATES PATENTS

| | | |
|---|---|---|
| 1,446,278 | Swenson | Feb. 20, 1923 |
| 1,504,885 | Germann | Aug. 12, 1924 |
| 1,683,678 | Kitterman | Sept. 11, 1928 |
| 1,990,372 | Cole | Feb. 5, 1935 |
| 2,479,203 | Brown | Aug. 16, 1949 |

FOREIGN PATENTS

| | | |
|---|---|---|
| 390,920 | France | Oct. 17, 1908 |
| 613,735 | France | Nov. 27, 1926 |

D6-608

FR 399229
APR 1979

FRANCE
2 399 229
APRIL, 1979



PETITIONER'S
EXHIBIT
3

DEVA/ ★          P28                    E1665B/19  ★ FR 2399-229
Towel or cloth for hanging from hook - is pref. circular and has loop
or hole pref. in centre
    DEVALOIS I H , 02.08.77-FR-024148
    (06.04.79) A47I-19

The towel or cloth suspended from a hook is designed to
have the shortest possible hanging length, and is therefore
pref. circular (A1).  It has one or more attachments (2)
for hanging it on a hook and these are preferably situated
near the centre (B) of the towel or cloth.

    In order to alter the hanging height of the towel or
cloth, the position of the attachment, or loop, can be mov
-ed from the centre.  The attachment can be in the form
of a piece of material attached, or a buttonhole in the tow-
el or cloth itself.



2. 8. 77, as 024148 (4pp318)

RÉPUBLIQUE FRANÇAISE

INSTITUT NATIONAL
LA PROPRIÉTÉ INDUSTRIELLE

PARIS

(11) N° de publication : **2 399 229**
(A n'utiliser que pour les
commandes de reproduction).

A1

# DEMANDE
# DE BREVET D'INVENTION

## N° **77 24148**

(54)    Torchon à attache centrale.

(51)    Classification internationale (Int. Cl.²).    **A 47 L 19/00.**

(22)    Date de dépôt .............................    **2 août 1977, à 11 h.**

(33) (32) (31)    Priorité revendiquée :

(41)    Date de la mise à la disposition du
public de la demande ............    B.O.P.I. — «Listes» n. 9 du 2-3-1979.

(71)    Déposant :   DEVALOIS Isabelle Hélène et DEVALOIS Anne Claire, Juniac, 87240 Ambazac.

(72)    Invention de :

(73)    Titulaire : *Idem* (71)

(74)    Mandataire :

Pl. unique                              2399229

FIG. 1



FIG. 2            FIG. 3                 FIG. 4



# EXHIBIT F

## AT IS A SONSPOT

*The Sonspot is the world's greatest beach towel - it's six feet round

*Changing the face of beaches all over the world, the Sonspot is considered the most radical beach fashion item since the bikini

## NOW WHEN THE SUN MOVES, YOUR TOWEL DOESN'T HAVE TO

*The round shape eliminates the need to constantly get up and move your towel as the sun moves across the sky.  Instead merely reposition yourself

*A 6-foot round towel keeps the sun worshipper completely off the sand, grass, pool etc.

## ONE FOR LYING, ONE FOR DRYING

*The round Sonspot is packaged with a 24" by 48" rectangular towel which is coordinated in style and design

*Both towels are high quality, plush velours.  Made of 100% cotton the ensemble is made in Brazil and comes in jacquard designs

## YOUR SPOT OR MINE

*The unique process required to manufacture the round Sonspot took over two years in the making, but has been perfected by Son International

*Both the name and the round shape of the Sonspot are trademarks of Son International.  Patent pending.  We have gone to painstaking lengths and have successfully protected ourselves and our customers from "knockoffs"

## BOUND TO BE ROUND

*Full time public relations/promotions staff is headed by Vice President Woody Harrelson, star of the hit TV show Cheers

*Upcoming stories and pictorials are scheduled in numerous fashion magazines (e.g. GQ, Elle) and other national publications (e.g. People, USA Today etc.)

*Son International PR staff willing to coordinate newspaper stories locally with each retailers introduction of the Sonspot

*Sonspot ensemble is available for $19.90 and can be ordered by contacting:

SON INTERNATIONAL
8217 BEVERLY BLVD
L.A., CA 90048
1-800-24TOWEL

PETITIONER'S
EXHIBIT
7





...ducing Sonspot™ from Springmaid,
...reat new beach towel line that's
...g to have everybody going
...nd in circles! These unique round
...i stay put on the beach while sun-
...ippers rotate to follow the sun.
...lon't expect them to stay put on
...elf. These towels are designed to
...With 7 bold designs for grown-
...and 2 charming ones for kids, we
...t a lot of heavy Sonspot™ activity
...immer. So give us a call before
...s start to heat up! (212) 903-2100



PETITIONER'S
EXHIBIT
8



**CLUB TANGO**
Nearly 6 feet in diameter



**BURGER TO GO**
Nearly 6 feet in diameter



**ZODIAC**
Nearly 6 feet in diameter



**LADY BUG**
Nearly 5 feet in diameter



**SPLASH**
Nearly 5 feet in diameter



**PIGS ON A BLANKET**
Nearly 6 feet in diameter



**COCKTAILS FOR TWO**
Nearly 6 feet in diameter



**TIME'S UP**
Nearly 6 feet in diameter



**SUNSMILE**
Nearly 6 feet in diameter

*Sunspot*
for
Springmaid

CLEM FRANEK
1-213-284-3266

- 213-284-3140

Springmaid

787 Seventh Avenue
New York, NY 10019 (212) 903-2100
© Springs 1989

Springs

The round shape of the towel is a trademark
which identifies it as a quality product of Son International.



**CLUB TANGO**
Nearly 6 feet in diameter

Introducing Sunspot™ from Springmaid, the great new beach towel line that's going to have everybody going around in circles! These unique round towels stay put on the beach while sun-worshippers rotate to follow the sun. But don't expect them to stay put on the shelf. These towels are designed to move. With 7 bold designs for grown-ups and 2 charming ones for kids, we predict a lot of heavy Sunspot™ activity this summer. So give us a call before things start to heat up! (212) 903-2100

BEACH ENSEMBLE

# HUGE ROUND BEACH TOWEL

## LUXURIOUS BEACH TOWEL — for LYING
## NEARLY 6 FEET IN DIAMETER

PETITIONER'S
EXHIBIT



# The World's Greatest Beach Towel
## Now when the sun moves, your towel doesn't have to.

*One for lying, one for drying! Bound to be round! Don't be square!*

The round shape of the Sonspot® is a trademark of Son International

100% Cotton
Made in Brazil

Patent Pending
Copyright 1986 Son International

PETITIONER'S
EXHIBIT
9


*SONSPOT* ®

### TWO TOWEL
### BEACH ENSEMBLE

PETITIONER'S
EXHIBIT

# HUGE ROUND BEACH TOWEL
### LUXURIOUS BEACH TOWEL — for LYING
### NEARLY 6 FEET IN DIAMETER



# The World's Greatest Beach Towel
Now when the sun moves, your towel doesn't have to.

*One for lying, one for drying! Bound to be round! Don't be square!*
The round shape of the Sonspot® is a trademark of Son International

100% Cotton
Made in Brazil

Patent Pending
Copyright 1986 Son International


PETITIONER'S
EXHIBIT
10

**SKISMOI** ®

TWO TOWEL
BEACH ENSEMBLE

# HUGE ROUND BEACH TOWEL

## LUXURIOUS BEACH TOWEL — for LYING
## NEARLY 6 FEET IN DIAMETER

PETITIONER'S
EXHIBIT
5



# *The World's Greatest Beach Towel*

Now when the sun moves, your towel doesn't have to!

### *One for lying, one for drying! Bound to be round! Don't be square!*

The round shape of the Sonspot® is a trademark of Son International

100% Cotton
Made In Brazil

Patent Pending
Copyright 1986 Son International



PETITIONER'S
EXHIBIT
11

SONSPOT ® 

TWO TOWEL
BEACH ENSEMBLE

# HUGE ROUND BEACH TOWEL

## LUXURIOUS BEACH TOWEL — for LYING
### NEARLY 6 FEET IN DIAMETER

PETITIONER'S EXHIBIT



# *The World's Greatest Beach Towel*
### Now when the sun moves, your towel doesn't have to.

*One for lying, one for drying! Bound to be round! Don't be square!*

The round shape of the Sonspot® is a trademark of Son International

100% Cotton
Made in Brazil

Patent Pending
Copyright 1986 Son International

PETITIONER'S
EXHIBIT

12

# Success: CHEERS Woody Harrelson

**C**HEERS' dumb bartender is no dope when it comes to life on the other side of the tavern bar.

As Woody Boyd, he is convincingly slow-witted. As himself, he's Woody Harrelson, talented actor and shrewd businessman.

"I'm very conscious of the image that people have of me from the show," he says. "But I've come to terms with it."

The real Woody, 26, majored in English and theater arts, has written two plays, which he plans to produce in Los Angeles, and is a partner in a beach gear business, selling everything from a large circular beach towel — "so that you don't have to keep turning it around with the sun" — to a digital wrist watch called The Wave, which operates on water rather than batteries. The enterprise brings in a healthy profit.

The beach is the place where he lives now — in a town house where the



*CHEERS bartender Woody Harrelson is conscious of his image.*

monthly rent is more than he earned in six months as a struggling actor in New York. Opportunities didn't abound then and he held jobs as a waiter, busboy, runner, and cook before he hit the happy formula with the Woody role on Cheers.

"Sometimes I wish I were more like Woody," he says. "He's such a loving person. I'm capable of being a loving person, but I don't have his naivete."

Ironically, it's the success of Woody's naive character that has brought in enough money for the real Woody to make his mark as a businessman.

"I'm hoping the beach business will make me financially independent enough so that I won't have to accept any roles that I don't think are high quality," he says. "And I have to thank Woody for giving me the means for that."

PETITIONER'S EXHIBIT

# 25 MOST PROFITABLE COMPANIES

Here are the 25 most profitable companies in the United States, as compiled by Forbes magazine on the basis of return on equity during the last three to five years.

- 1. Reebok International, athletic apparel manufacturer.
- 2. CenTrust Savings Bank, savings and loan.
- 3. Anchor Glass, glass container manufacturer.
- 4. Coleco Industries, toy manufacturer.
- 5. Chrysler, car manufacturer.
- 6. Highland Superstores, retailer.
- 7. Seagate Technology, computer equipment manufacturer.
- 8. Columbia Savings & Loan Association, savings and loan.
- 9. Lockheed, aircraft manufacturer.
- 10. Sun Microsystems, computer manufacturer.
- 11. Liz Claiborne, apparel manufacturer.
- 12. Price Co., wholesale merchandiser.
- 13. Limited Inc., retailer.
- 14. Western Savings & Loan, savings and loan.
- 15. Mayfair Super Markets, retailer.
- 16. Subaru of America, auto manufacturer.
- 17. U.S. Healthcare, health maintenance organizations.
- 18. Commerce Clearing House, publisher.
- 19. Home Depot, retailer.
- 20. Student Loan Marketing, loan financing.
- 21. General Motors EDS, computer systems.
- 22. American Continental, financial service and real estate holding company.
- 23. ICH, insurance holding company.
- 24. Kellogg, food manufacturer.
- 25. General Cinema, soft drink manufacturer and theatre chain owner.

PETITIONER'S EXHIBIT

13



PETITIONER'S
EXHIBIT

# CALIFORNIA

**State of mind. State of hysteria. State of the art of trendy toys, goofy gadgets and mad, made-for-the-sun style. That's why we love it. And these California playthings.**



## L.A. LOCKS
Love the look of L.A. locks? They're yours courtesy of Dep's new L.A. Looks Styling Line which includes gel, mousse, spritzer, spray and extra volume styling liquid. Olé L.A. We like your hair style!



## SUMMER CAMP
If the sweet scent of Camp Beverly Hills is what wafts from your Jag, consider they've added a Body Mousse and Bath Powder for summer cooling. And just check the package. *That's* cool! The brush? Awesome!

## INSTANT TAN
If you want the California look but wouldn't dream of risking sun damage, just pop the lid on Shiseido's Compact Foundation. Used wet or dry (and applied with its own sponge), it gives the safe illusion of a month in the sun.





## SUNSPOT
What's this? A Sonspot and no, it isn't a typo. It's the world's first *round* beach towel, designed by L.A.'s Son International, whipped up by Springmaid. Why round? Aren't *you* tired of turning your towel to face the sun? Now you needn't.



PETITIONER'S
EXHIBIT
14

Woody Finds New Role

SEPT. 1988

# *Cheers* Star Toasts Success With Innovative Firm

### By Cathy Panes

*6150 MISION GORGE RD*
*SUIT 225*
*SAN DIEGO CALIF- 92120*



**WOODY'S WATCHES** — Woody Harrelson promoting the water-powered Wave Watch, the company's second product to hit the market.

Woody Harrelson convincingly portrays Woody Boyd, the lovably naive Indiana farm boy turned bartender on the hit TV show, *Cheers*. In real life, Harrelson is far from gullible, especially when it comes to his business venture. He is the vice president in charge of publicity and marketing for Son International, a beach accessories company based in Hermosa Beach, Calif.

Son International introduced the first round beach towel, SonSpot, last summer and received an overwhelming response from consumers. Retail sales for the first year totaled over $1 million. The purpose of a round beach towel is simple: "Now when the sun moves, your towel doesn't have to."

Their second product to reach stores is the Wave Watch, and like the SonSpot, is attracting attention for its originality. The watch runs on water and needs refilling only once or twice a month simply by wearing it in the shower or during a swim.

The success of the SonSpot towels and Wave Watches has prompted Son International to create additional products for the market. The company is presently in the process of developing an entire line of beach fashion items.

### Starting Out

Son International was founded in 1985 and besides Harrelson, includes Clem Franek, president of the firm, Robert Farrelly, vice president of sales, and Glen Grunwald, chief legal and financial advisor (who also was former captain of the Indiana University 1981 national championship basketball team).

Franek, previously an investment advisor in Rhode Island, started in business at a young age. At 17, he was in the import/export business, shipping American cars to Europe. He came up with the concept for the round beach towel while, at the beach during a windy day, he was covered with sand as people were getting up to reposition their towels.

"It struck me as something with incredible potential," Franck said. He spent two years developing the towels and trying to find a

PETITIONER'S EXHIBIT 15

Hair Salon in Birmingham and Powers Modeling Agency threw themselves into the event that reportedly astounded the 450 people who jammed the club. Organizers hope to repeat it next year, said Tim Nasso, a spokesman for the consulate.



Woody Harrelson, star of television's "Cheers" series, relaxes on his other job.

### Is he just fooling around?

This time, we throw ourselves on your mercy. We just don't get it. Woody Harrelson, who plays the naive bartender Woody on "Cheers," is co-owner and a spokesperson for Son International. This California company manufacturers giant — six feet in diameter — round beach towels. Why is round better than square? Why is this company encouraging people to lie out in the sun and roast themselves? We believe we're performing a public service by posing these questions. Think about it. These towels cost between $40 and $50. We say get your fill of the beach while sitting under a nice shade tree.

*By Robin D. Givhan*

Knight-Ridder Newspaper

**B**aby boome
generation
planned to
immortality
They've
tucked and their tr
liposuctioned middl
Retin-Aed crows' f

What they have
removed.

But as the first
chronological corne
is becoming unavoid
have just about had

The generation
future through rose
now being forced to
tinted bifocals.

Boomers are fall
presbyopia, an age-
caused by the harde
eye and the loss of
these emerging pres
call them, are not a
deterioration gracef

Lynn Diener, for
refused to admit an
reasons she was squ
head and closing on
reading the newspap
accounts.

I'm tired, she tol
The light isn't qu
My arms are too

Needing reading
a shattering experie
boomers, said optici
who sells more than
average month. "We
generation," he said.
a cap on a tooth or a
you feel like you are

Optometrists do
the tender feelings
confronting their mo
time. "I try not to u
explained Dr. Steve
it light, to say, 'When
point in life . . .' or
But they are at a per
feel they are beginni

PETITIONER'S
EXHIBIT
16

# EXHIBIT G

Attorney Docket:  BOIC-002

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### TRADEMARK TRIAL AND APPEALS BOARD

ALAIN D. BOICE                    :

     Petitioner          :
                  :
        v.               :       Cancellation No.  17,437
                  :
CLM DESIGN, INC.                  :       Reg. No. 1,502,261
                  :
     Respondent          :
                  :

The Honorable Commissioner of
    Patents & Trademarks
Washington, D.C. 20231

Sir:



PETITIONER'S
EXHIBIT
6

## AFFIDAVIT OF GLORIA L. BOWEN

STATE OF MARYLAND   )
                  )SS.
COUNTY OF MONTGOMERY)

    I, Gloria L. Bowen, a citizen of the United States, having
been duly sworn, state as follows:

    1.   I visited CLM Design, Inc. on February 10, 1989, in Los
Angeles, California.

    2.   During my visit I met Mr. Clem Franek.

-1-

3.    Mr. Franek stated to me that only CLM Design was allowed to make, use or sell the round beach towel, because of their trademark on the round beach towel.

4.    Mr. Franek stated to me that the old fashion way of getting up and moving and turning a rectangular towel was no longer necessary.  With the round towel, as stated by Mr. Franek, a person need only rotate the body without moving the towel.

5.    Mr. Franek stated to me that the CLM Design, Inc. will make $10 million this year, 1989, from sales of the round towel.


IN TESTIMONY WHEREOF, I have hereunto set my hand.

County of    Montgomery

State of    Maryland

Subscribed and sworn to before me this  31  day of

March , 1989 .

_Gloria L. Bowen_

Gloria L. Bowen

Date  3-31-89

_Leslie A. Snyder_

Notary Public

SEAL  LESLIE A. SNYDER
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires July 1, 1990

-2-

# EXHIBIT H



## CORPORATION FILE DETAIL REPORT

| Entity Name | CLM DESIGN, INC. | File Number | 54151381 |
|---|---|---|---|
| Status | DISSOLVED | | |
| Entity Type | CORPORATION | Type of Corp | DOMESTIC BCA |
| Incorporation Date (Domestic) | 02/19/1986 | State | ILLINOIS |
| Agent Name | RAYMOND N NIMROD | Agent Change Date | 06/18/1992 |
| Agent Street Address | 200 S MICHIGAN AVE #1000 | President Name & Address | CLEMENS E FRANEK 4601 POST RD E GREENWICH RI 02818 |
| Agent City | CHICAGO | Secretary Name & Address | INVOLUNTARY DISSOLUTION 07 01 94 |
| Agent Zip | 60604 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 00/00/0000 | For Year | 1994 |
| Assumed Name | INACTIVE - SON INTERNATIONAL | | |

**Return to the Search Screen**

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE







## United States Patent and Trademark Office

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Assignments on the Web > **Trademark Query**

# Trademark Assignment Details

Reel/Frame: 3572/0346               **Pages:** 4
Received: 07/02/2007 ←——      Recorded: 07/02/2007 ←——
Attorney Dkt #: 99999-70001
Conveyance: NUNC PRO TUNC ASSIGNMENT

## Total properties: 1

1    **Serial #:** 73627482     **Filing Dt:** 10/29/1986     **Reg #:** 1502261     **Reg. Dt:** 08/30/1988
     **Mark:**

## Assignor

1   CLM DESIGN, INC.                        **Exec Dt:** 06/29/2007
                                          **Entity Type:** CORPORATION
                                          **Citizenship:** ILLINOIS

## Assignee

1   FRANEK, CLEMENS E.                  **Entity Type:** INDIVIDUAL
    4601 POST RD.                                **Citizenship:** UNITED STATES
    EAST GREENWICH, RHODE ISLAND 02818

## Correspondence name and address

ELAYNA T. PHAM
919 THIRD AVENUE
37TH FLOOR
NEW YORK, NY 10022

Search Results as of: 03/03/2008 04:41 PM
If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350. v.2.0.1
Web interface last modified: April 20, 2007 v.2.0.1

| .HOME | INDEX | SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

Int. Cl.: 24

Prior U.S. Cl.: 42

## United States Patent and Trademark Office

Reg. No. 1,502,261
Registered Aug. 30, 1988

## TRADEMARK
### PRINCIPAL REGISTER



CLM DESIGN, INC. (ILLINOIS CORPORA-
TION), DBA SONS, INC.
SUITE NO. 1
8217 BEVERLY BOULEVARD
BEVERLY HILLS, CA 90048

FOR: BEACH TOWELS, IN CLASS 24 (U.S.
CL. 42).

FIRST USE 8–15–1985; IN COMMERCE
2–14–1986.
THE MARK CONSISTS OF A CONFIGURA-
TION OF A ROUND BEACH TOWEL.
SEC. 2(F).

SER. NO. 627,482, FILED 10–29–1986.

JANICE O'LEAR, EXAMINING ATTORNEY