# EXHIBIT 4

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE APPLICATION OF )
)
CLM DESIGN, INC. (d/b/a/ ) Trademark Attorney
SON INTERNATIONAL) ) Janice O'Lear
)
SERIAL NO. 627,482 ) Law Office V
)
FOR: ROUND BEACH TOWEL DESIGN )

RESPONSE

Honorable Commissioner of
Patents and Trademarks
Washington, D.C. 20231

Sir:

   In response to the Office Action dated March 20, 1987, applicant amends the above-identified application as follows:

IN THE STATEMENT

   Page 1, paragraph 2, line 4, after "1946.", insert -- The mark consists of a configuration of a round beach towel. --

REMARKS

   The applicant has carefully considered this application in light of the Office Action mailed March 20, 1987.

   In the Office Action, Trademark Attorney O'Lear refused registration of the ROUND BEACH TOWEL DESIGN trademark on the Principal Register stating that the mark constitutes a configuration of applicant's goods and, as such, is merely descriptive of the goods. Trademark Attorney O'Lear stated that the mark could not be registered in the absence of proof of

[Mail Room stamp: SEP 24 1987 PAT. & TRADEMARK OFF.]

[Certificate of mailing:]
I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on 9/21/87
Date of Deposit
Raymond Nimrod
Name of applicant, assignee, or Registered Representative
Raymond Nimrod
Signature
9/21/87
Date of Signature

Applicant submits herewith conclusive evidence that applicant's ROUND BEACH TOWEL DESIGN mark has acquired secondary meaning under Section 2(f) and is entitled to registration. Applicant respectfully requests that the Examining Attorney consider the following remarks and attachments, including the nineteen (19) declarations from members of the retail beach towel industry, withdraw the refusal to register and pass the application to publication.

Applicant adopted the ROUND BEACH TOWEL DESIGN mark for its beach towel so that the original, distinctive and peculiar appearance of its beach towel would distinguish it from the beach towels of others and identify the beach towel as coming a single source, Son International. (Exh. 1, ¶3 (Declaration of Glen Grunwald, Vice-President of CLM Design)). It is the belief of the nineteen retailers whose declarations are submitted herewith that the configuration of applicant's round beach towel of applicant is unique. Based on their knowledge, they each conclude that no competitive product has a similar shape or design. (Exhibits 2-20).

Applicant always emphasizes the round shape of its beach towels in the promotion of its product. (Exh. 1, ¶8). The attached brochures demonstrate one manner in which applicant stresses the round shape. (Exhs. 23 & 24). The round shape of the beach towel dominates the brochures. One brochure contains the phrase "Bound to be round" and the other states "Don't be square." These all serve to draw the potential customer's attention to the unique, round shape of the beach towel in such a manner as to promote public recognition thereof as an indication of origin.

The packaging material (Exh. 25) and the towel label (Exh. 22) similarly display applicant's ROUND BEACH TOWEL DESIGN

the first "o" in "Sonspot". The ROUND BEACH TOWEL DESIGN trademark is offset in a different color and script, and thus stands out in striking contrast to the other letters in "Sonspot". Moreover, the packaging material and the label each include another use of the ROUND BEACH TOWEL DESIGN mark with a declaration to the public that the round shape of the beach towel is a trademark of Son International. (Exhs. 22 and 25, see also Exh. 1, ¶8).

Applicant has also obtained extensive publicity in television, newsprint and in connection with live entertainment for its beach towel. (Exh. 1, ¶¶10, 11 & 12). The unique configuration of the beach towel is always emphasized, and Son International is identified as the manufacturer of the round beach towel. (Exh. 1, ¶10, 11 & 12).

Applicant's beach towel is sold in approximately 155 retail stores in at least 32 states, Puerto Rico, the U.S. Virgin Islands and the District of Columbia. (Exh. 1, ¶9). Many of these stores have multiple locations, such as Bloomingdale's, Jordan Marsh, Burdines, and Woodward & Lathrop.

The beach towels are frequently displayed in point of sale promotions which are placed at some distance away from the potential customer. (Exh. 1, ¶6). In addition to store displays, the towels are often promoted for sale at shows or crowded summer events under circumstances where it is not feasible for the purchaser or potential purchaser to stand close enough to read a word trademark. (Exh. 1, ¶¶6, 12). Applicant's beach towel is also viewed on beaches at varying distances, where a word mark again would be ineffective. Applicant's ROUND BEACH TOWEL DESIGN trademark identifies applicant's brand of towel from such distances at which the normal person would be unable to read

As a result of applicant's extensive use, the ROUND BEACH TOWEL DESIGN trademark has acquired secondary meaning. As proof of the secondary meaning and distinctiveness, applicant hereby submits nineteen (19) declarations by people associated with the retail towel industry. (Exhs. 2-20). The declarations conclusively establish that the configuration of the round beach towel has acquired secondary meaning in the marketplace.

The declarants have a combined total of 165 years of experience in the retail industry and an average experience of over eight years. (Exhs. 2-20). Each of the declarants states that he or she is familiar with beach towels and that the configuration of a round beach towel (the mark sought to be registered) is manufactured by a single source.

Each declarant further states that the mark sought to be registered has acquired the ability to distinguish applicant's brand of beach towel from other beach towels. Each declarant states that the mark sought to be registered is unique, that it identifies applicant's product even at a distance, that no competitive product is similarly configured and that any product so configured would come from the same source and be of equal quality.

The forms of these declarations were prepared by counsel for applicant and each is therefore quite similar in language. However, this identity or similarity does not prevent their use or detract from their sufficiency. <u>In re Drums, Ltd.</u>, 210 USPQ 222 (TTAB 1981).

It is well established that in proving distinctiveness, the applicant need only show a <u>prima facie</u> case of distinctiveness, it does not have to be conclusively established. In re Packaging Specialists, Inc., 221 USPQ 917 (TTAB 1984)

Synergistics Research Corp., 218 USPQ 165, 167 (TTAB 1983). Here, the applicant has more than carried the burden of proving a prima facie case of distinctiveness of the trademark.

Applicant's promotional material prominently feature applicant's beach towel configuration in a manner so as to promote public recognition thereof as an indication of origin. The declarations submitted herewith establish that each retailer believes that applicant's ROUND BEACH TOWEL DESIGN trademark is distinctive and identifies the source of the goods. The declarations of the retailers further establish that, based on their experience, they each believe that the configuration of applicant's round beach towel has acquired the ability to distinguish applicant's brand of beach towel from other brands of beach towels. These facts strongly support the conclusion that applicant's mark is distinctive and entitled to registration. In re Motorola, Inc., 3 USPQ 2d 1142, 1143 (TTAB 1986); In re Superba Cravats, Inc., 145 USPQ 354, 355 (TTAB 1965). See also In re World's Finest Chocolate, Inc., 177 USPQ 205 (CCPA 1973).

Based upon the above, the evidence of the record overwhelmingly establishes that the ROUND BEACH TOWEL DESIGN mark sought to be registered distinguishes applicant's product from other brands of towels in the marketplace. The mark sought to be registered has obtained a secondary meaning, is distinctive of applicant's goods, and accordingly is not merely descriptive of the goods. Thus, the mark is registrable on the Principal Register.

Applicant contends that the mark is registrable for the additional reason that it is inherently distinctive. The Examining Attorney noted that ordinary geometric shapes are generally regarded as non-distinctive and protectable only upon proof of secondary meaning. See In re B&J Mfg. Co., 196 USPQ 707 (TTAB 1977); American Can Co. v. Marcal Paper Mills, Inc., 152 USPQ 772 (TTAB 1967). However, the rule set forth in those cases

pertains to ordinary geometric shapes used as background or vehicles for the display of word or letter marks. B&J Mfg., 196 USPQ at 710; American Can Co., 152 USPQ at 776.

Applicant does not use the ROUND BEACH TOWEL DESIGN mark merely as a background or vehicle for a word or letter mark. (See, e.g., Exhs. 23 & 24). For example, in the "Painted Heart" towel of applicant, the ROUND BEACH TOWEL DESIGN trademark dominates the overall impression made upon the viewer relative to the word mark "Sonspot". This is especially true when purchasers and potential purchasers view the beach towel from a distance, as frequently happens. (Exh. 1, ¶¶ 6 & 12). Thus, the holdings in B&J Mfg. and American Can do not apply here.

The round shape of applicant's beach towel is unique for beach towels. (Exhs. 1-20). Because of this uniqueness, the design is inherently distinctive. See In re International Playtex Corp., 153 USPQ 377, 378 (TTAB 1967); In re Days-Ease Home Products Corp., 197 USPQ 566, 568 (TTAB 1977). As such, applicant's mark consisting of a configuration of a round beach towel is properly registerable on the Primary Register.

In sum, applicant maintains that it has conclusively established that its ROUND BEACH TOWEL DESIGN trademark has acquired secondary meaning. Moreover, applicant contends that the unique shape of the beach towel renders the configuration inherently distinctive and properly registrable.

Applicant has amended its application to include a concise description of the mark sought to be registered. Applicant adopts the description of the mark suggested by the Examining Attorney. Applicant also submits a label (Exh. 22), promotional brochures (Exhs. 23 & 24) and packaging material (Exh. 25), as discussed above.

Pursuant to the Examining Attorney's request, applicant also submits a copy of a pending application for a design patent entitled BEACH TOWEL FOR OUTDOOR USE assigned to applicant

(attached as Exhibit 21). The design patent application is, of course, independent of, and immaterial to, the ownership of trademark rights. <u>In re World's Finest Chocolates, Inc.</u>, 177 USPQ 205, 207 (C.C.P.A. 1973).

For the reasons stated above, the applicant respectfully submits that the mark is properly registerable and requests that this application be allowed and that the mark be published.

Applicant submits a Revocation Of And Substitute Power Of Attorney concurrently with this Response. Please charge any fees related to this Response or the Power of Attorney to Deposit Account No. 14-0755. Two duplicates of this paper are enclosed.

                              Respectfully submitted,

By: *Raymond N. Nimrod*
     Raymond N. Nimrod
     Reg. No. 31,987

NEUMAN, WILLIAMS, ANDERSON & OLSON
77 West Washington Street
Chicago, Illinois   60602
(312) 346-1200

Dated:   September 21, 1987

-7-