# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CLEMENS FRANEK,<br><br>                    Plaintiff,<br><br>        v.<br><br>WALMART STORES, INC. and<br>TARGET CORPORATION,<br><br>            Defendants. | Civil Action No. 08-Civ-0058<br><br>Judge Robert M. Dow, Jr.<br><br>*JURY DEMAND* |
| JAY FRANCO & SONS, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>CLEMENS FRANEK,<br><br>            Defendant. | Civil Action No. 08-Civ-1313<br><br>Judge Robert M. Dow, Jr.<br><br>*JURY DEMAND* |

## PLAINTIFF JAY FRANCO & SONS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FRANEK BEARS THE BURDEN OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  FRANEK'S OWN ADVERTISEMENTS AND
ADMISSIONS HAVE TOUTED THE FUNCTIONALITY
OF HIS ROUND TOWEL MARK. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  EACH OF FRANCO'S ASSERTED UTILITY
PATENTS LITERALLY RECITES IN CLAIMS,
DISCLOSES IN THE SPECIFICATION, AND
SHOWS IN THE DRAWINGS THE FUNCTIONALITY
OF THE IDENTICAL ROUND TOWEL CONFIGURATION
THAT IS THE SUBJECT OF FRANEK'S ROUND
TOWEL MARK. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.  WHEN FRANCO'S ASSERTED UTILITY PATENTS
EXPIRED, THE ROUND TOWEL FEATURE RECITED
IN THE CLAIMS OF THE PATENTS, THAT IS THE
SUBJECT OF FRANEK'S ROUND TOWEL MARK,
WENT IN TO THE PUBLIC DOMAIN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.  CONTRARY TO FRANEK'S ASSERTIONS, THE
"ESSENTIAL FEATURE" OF FRANEK'S ROUND
TOWEL MARK AND THE "CENTRAL ADVANCE"
OF FRANCO'S ASSERTED UTILITY PATENTS
ARE ONE AND THE SAME. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A.     The *TrafFix* Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

B.     Applying *TrafFix*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII.  THE *FUJI, LOGAN* AND *KEYSTONE* CASES
CONFIRM THAT FRANEK'S ROUND TOWEL
MARK IS FUNCTIONAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VIII.    FRANCO'S ASSERTED UTILITY PATENTS ARE
PRESUMPTIVE EVIDENCE OF THE FUNCTIONALITY
OF FRANEK'S ROUND TOWEL MARK REGARDLESS
OF WHETHER FRANEK EVER OWNED THESE PATENTS
OR WHETHER OR NOT THESE PATENTS WERE EXPIRED
WHEN FRANEK FILED HIS ROUND TOWEL MARK . . . . . . . . . . . . . . . . . . . . . . . . 18

IX.    BECAUSE FRANEK'S ROUND TOWEL MARK IS
PRESUMPTIVELY FUNCTIONAL, FRANEK'S ASSERTIONS
OF THE "SECONDARY MEANING" OF HIS ROUND
TOWEL MARK AND OF ALTERNATIVE DESIGNS FOR
BEACH TOWELS ARE UNAVAILING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

     A. Secondary Meaning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

     B. Alternative Designs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

X.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## CASES

Page No.

*Berlin Packaging, LLC v. Stull Technologies, Inc.,*
381 F.Supp.2d 792 (N.D. I11. 2005) . . . . . . . . . . . . . . . . .2, 4, 7, 8, 9, 10, 11, 12, 13, 21

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
489 U.S. 141 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Door Systems Inc. v. Pro-Line Door Systems Inc.,*
83 F3.d 169 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.,*
94 F.3d 376 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Eco Mfg. LLC v. Honeywell Intern., Inc.,*
357 F.3d 649 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Elmer v. ICC Fabricating,*
67 F.3d 1571 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fuji Kogyo Co., Ltd. v. Pac Bay Int'l, Inc.,*
461 F.3d 675 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17, 18

*Hedberg v. Indiana Bell Telephone Co.,*
47 F.3d 928 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Bose Corp.,*
772 F.2d 866, 872-873 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Howard Leight Indistries, LLC,*
80 U.S.P.Q.2d 1507, 2006 WL 1968605 (T.T.A.B. 2006) . . . . . . . . . . . . . . . . . . 14

*In re Oscar Mayer & Co.,*
189 U.S.P.Q. 295 (T.T.A.B. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Telesco Brophey, Ltd.,*
170 U.S.P.Q. 427 (T.T.A.B. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Virshup,*
    42 U.S.P.Q.2d 1403 (T.T.A.B. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kellogg Co.  v.  National Biscuit Co.,*
    305 U.S. 111 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Keystone Mfg.  Co.  v.  Jaccard Corp.,*
    No.  03-648, 2007 WL 655758 (W.D.N.Y. Feb.  26, 2007). . . . . . . . . . . . . .13, 16, 17, 18

*Kohler Co.  V.  Moen Inc.,*
    12 F.3d 632 (7th Cir.  1993)(Cudahy, J.). . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6, 12, 24

*Logan Graphic Products, Inc.  v.  Textus, Inc.,*
    No.  02-1823, 2003 WL 31870549 (N.D. Il1.  Dec.  23, 2002). . . . . . . . . . . . . . 13, 16, 18

*Slowiak v.  Land O' Lakes, Inc.,*
    987 F.2d 1293 (7th Cir.  1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Singer Mfg.  Co.  v.  June Mfg.  Co.,*
    163 U.S. 169 (1896). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Specialized Seating, Inc.  v.  Greenwich Industries, L.P.,*
    472 F.Supp.2d 999 (N.D. Il1. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4, 5, 19, 24

*Talking Rain Beverage Co.  Inc.  v.  South Beach Beverage Co.,*
    349 F.3d 601 (9th Cir.  2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*TrafFix Devices, Inc.  v.  Marketing Displays, Inc.,*
    532 U.S. 23 (2001). . . . . . . . . . . . . . . . . . .2, 4, 5, 7, 8, 9, 10, 12, 15, 17, 18, 19, 21, 23

*Qualitex Co.  v.  Jacobson Products Co., Inc.,*
    514 U.S. 159 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## **STATUTES AND RULES**

15 U.S.C. § 1057(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

35 U.S.C. § 112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

# OTHER AUTHORITIES

1 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition,*
   §7:75 (4th ed.  2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

1 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition,*
   §7:89 (4th ed.  2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

1 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition,*
   §7:89.30 (4th ed.  2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 19, 20

*Restatement Third, Unfair Competition* §17, comment b (1995). . . . . . . . . . . . . . . . . . . . . . . . . 23

## I.    **INTRODUCTION**

Plaintiff Jay Franco & Sons, Inc. ("Franco") has overwhelmingly established by irrefutable evidence, supported by a wealth of precedent that Defendant Clemens Franek's ("Franek") "horrible example of a federal trademark registration" (U.S. Trademark Reg. No. 1,502,261) for a round beach towel (sometimes referred to hereinafter as the "Round Towel Mark"), *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 647 (7th Cir. 1993)(Cudahy, J.), is presumptively functional and invalid.

Franek's "Memorandum of Law in Response to Jay Franco & Sons, Inc.'s Motion for Partial Summary Judgment" and Franek's "Response to Jay Franco & Sons, Inc.'s Local Rule 56.1 Statement of Material Facts as to Which There is No Genuine Issue" (collectively referred to as "Franek's Response") attempt to confuse this Court with conclusory statements of fact and inaccurate statements of law that are in direct conflict with Supreme Court and Seventh Circuit precedent. Franek's paltry attempts at obfuscation do not come close to fulfilling Franek's **heavy burden of proof** to overcome the presumption that his Round Towel Mark is functional and invalid because it: (1) is a necessary part of the very preferred embodiment claimed, disclosed, and shown to be **functional** in various active and expired **utility patents**, including U.S. Utility Patent Nos. 2,803,845 ("the '845 utility patent"); 3,660,861 ("the '861 utility patent"); 4,794,029 ("the '029 utility patent"); 4,991,978 ("the '978 utility patent"); and French Utility Patent No. 2,399,229 ("the '229 French Utility Patent"); (2) has been **advertised** by Franek's own company CLM Design, Inc. ("CLM"), d/b/a Son International, Inc. or Sons, Inc., as being utilitarian and functional; (3) has been **admitted** to be functional by the founders of CLM, including Defendant Clemens Franek, himself; (4) is an improper restriction on Jay Franco's right to copy a round towel specifically recited in the patent claims of expired patents under the Patent Law; and (5) has been described by Judge Cudahy of the Seventh Circuit to be a

"horrible example of allowing a federal trademark registration to substitute for the grant of a design patent." *Id.*

## II.     FRANEK BEARS THE BURDEN OF PROOF

In this circuit, Franek's registered Round Towel Mark is entitled to a presumption of validity which has now dissolved upon Jay Franco's presentation of strong evidence that his Round Towel Mark is functional and invalid. *See Kohler*, 12 F.3d 632 at 647 (where Judge Cudahy stated that Franek's Round Towel Mark is "a horrible trademark registration").

With a trademark registration comes a presumption of validity. 15 U.S.C. § 1057(b). However, this presumption of validity dissolves upon the presentation of evidence of invalidity:

> The presumption of validity that federal registration confers (*see* 15 U.S.C. Section 1115(a)) evaporates as soon as evidence of invalidity is presented. [cites omitted]. Its only function is to incite such evidence, and when the function has been performed the presumption drops out of the case.

*Door Systems Inc. v. Pro-Line Door Systems Inc.*, 83 F.3d 169, 172 (7th Cir.1996). Although these two presumptions are at odds with each other, the presumption of validity drops out of the case if it is rebutted with the presentation of evidence of invalidity. In this case, Jay Franco's asserted utility patents, and Franek's own advertisements and admissions provide strong evidence of invalidity that causes the presumption of validity to drop out of the case. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 30 (2001).

Therefore, the heavy burden of proving the non-functionality of his Round Towel Mark remains upon Franek. *See Berlin Packaging, LLC v. Stull Technologies, Inc.*, 381 F.Supp.2d 792, 801 (N.D. Ill. 2005). However, Franek has not and cannot overcome the strong evidence of functionality and invalidity in this case.

III.   **FRANEK'S OWN ADVERTISEMENTS AND ADMISSIONS HAVE TOUTED THE FUNCTIONALITY OF HIS ROUND TOWEL MARK.**

Franek's company CLM Design, Inc. has advertised and its founders, including Franek himself, have admitted the **functionality** of Franek's Round Towel Mark as permitting sunbathers to reposition their bodies on the round towel in order to get direct tanning exposure from the sun without having to reposition the towel. (*See* Plaintiff Jay Franco & Sons, Inc.'s Rule 56.1(a)(3) Statement of Material Facts ("SOF"), ¶¶54-70). Notably, the **functional** purpose for the round shape of the beach towel explicitly stated in CLM's advertisements and as admitted by its founders is the exact same functional purpose for the circular or round shaped beach towel set forth in claim 2 of Franco's asserted '029 utility patent – "[the] circular... shape [of the towel permits] a user while sunbathing... [to] reposition his or her body towards the changing angle of the sun while the towel remains stationary."(SOF ¶¶54 and 70) Thus, Franek's own advertisements and admissions, as well as Franco's asserted utility patents strongly confirm that Franek's trademark registration for the Round Towel Mark is presumptively functional, which has not been rebutted by any evidence from Franek. *Specialized Seating, Inc. v. Greenwich Industries, L.P.*, 472 F.Supp.2d 999, 1014 (N.D. Ill. 2007).

IV.   **EACH OF FRANCO'S ASSERTED UTILITY PATENTS LITERALLY RECITES IN CLAIMS, DISCLOSES IN THE SPECIFICATION, AND SHOWS IN THE DRAWINGS THE FUNCTIONALITY OF THE IDENTICAL ROUND TOWEL CONFIGURATION THAT IS THE SUBJECT OF FRANEK'S ROUND TOWEL MARK.**

It is cannot be disputed that the identical round towel configuration in Franek's Round Towel Mark is literally recited in the **patent claims** in each of Franco's asserted patents as a functional element:

the **'029** utility patent claims a "**towel [that] is circular in shape**," with the presumptive utilitarian claimed purpose of permitting "a user while sunbathing... [to] reposition his or her body towards the changing angle of the sun while the towel remains stationary."(SOF ¶35) The **'845** utility patent entitled "Circular Towel" claims a "**towel**" with a "**circular fabric body**."(SOF ¶29) The **'978** utility patent claims a "**circular, fabric towel element**."(SOF ¶42) The **'861** utility patent entitled "Combination Round Towel and Holder" claims a "**circular towel**."(SOF ¶47)

Thus, the claimed round towel configurations recited in the claims of the '029, '845, '978, and '861 U.S. utility patents create a **presumption of the functionality of a round or circular towel** under *TrafFix*. That is, "under the Supreme Court's decision in *TrafFix*," the circular towel configuration claimed in these utility patents is "presumptive evidence of [the] functionality" of the same circular towel configuration that is the subject of Franek's trademark registration for the Round Towel Mark. *Specialized*, 472 F.Supp.2d at 1012, *citing TrafFix*, 532 U.S. at 29-30.

It also cannot be disputed that the round towel configuration of Franek's Round Towel Mark is not only recited in the patent claims, but is identically shown in the patent drawings and identically described in the patent **specification**[1] to be functional in each of the preferred embodiments in Franco's asserted patents:

the **'029** utility patent shows in Figure 1 and explicitly describes in the specification the functional advantages of the **circular shape of the claimed towel** over conventional rectangular shaped towels – permitting sunbathers to "reposition[]... [their] bod[ies] toward the changing angle of the sun while the towel remains stationary."(SOF ¶¶33-36) The **'845** utility patent entitled "**Circular Towel**" shows in Figure 1 and explicitly describes in the specification the functional advantages of the **circular configuration of the claimed towel** – "provid[ing] a relatively large area of toweling for use by small children."(SOF ¶¶26-32) The **'978** utility patent shows in Figure 2 and explicitly describes in the specification the functional advantages of the **circular configuration of the claimed towel** – " provid[ing] a towel for drying purposes or to be laid on the beach for sunning purposes."(SOF ¶¶40-43)

---

[1]   The Supreme Court in *TrafFix* analyzed the **specification** language of MDI's patents to determine if they constituted strong evidence of functionality. *Berlin Packaging*, 381 F.Supp.2d at 800, *analyzing TrafFix* at 532 U.S. at 30.   The Court concluded that MDI had not overcome the heavy burden of showing that the trade dress claimed was non-functional. *Id.* at 32-33.

The **'861** utility patent entitled "**Combination Round Towel and Holder**" explicitly describes in the specification the dual functional advantages of the **circular configuration of the claimed towel**: (a) permitting a towel which is decorated on only one side "to be suspended from a hanger [from its geometric center]" without detracting from the decorative appearance of the towel, and (b) "[permitting the towel] to be able to be suspended from a minor area portion such that it can remain attached to a hanger leaving the major portion of the towel area for use in drying hands."(SOF ¶¶44-48)  The **'229** French utility patent shows in Figure 1 and explicitly describes in the specification the functional advantages of the **circular configuration of the disclosed circular towel** – "hav[ing] the shortest possible hanging length."(SOF ¶¶37-39)

Accordingly, as explained below, it is not necessary for this Court to conduct an infringement analysis of these patents in order to determine that Franek's Round Towel Mark is functional.  Instead, the drawings, specification, and claims of Franco's asserted utility patents provide strong, if not conclusive evidence, that Franek's Round Towel Mark is presumptively functional.  As noted above, that purpose is to "permit[] a user while sunbathing... [to] reposition his or her body towards the changing angle of the sun while the towel remains stationary."(SOF ¶¶54 and 70) Because Franek's round towel is necessary for its operation and is not ornamental, Franek's Round Towel Mark is presumptively functional as a matter of law under *TrafFix*.  *See Specialized*, 472 F.Supp.2d at 1012, *citing TrafFix*, 532 U.S. at 29-30.

V.    **WHEN FRANCO'S ASSERTED UTILITY PATENTS EXPIRED, THE ROUND TOWEL FEATURE RECITED IN THE CLAIMS OF THE PATENTS, THAT IS THE SUBJECT OF FRANEK'S ROUND TOWEL MARK, WENT IN TO THE PUBLIC DOMAIN.**

Once Franco's asserted '845, '861, '029, '978 U.S. utility patents expired, the public, including Jay Franco, was entitled to practice and copy all of the structural elements recited in the claims of these patents, including the round towel element claimed in each patent. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165(1989) ("For almost 100 years it has been well

established that in the case of an expired patent, the federal patent laws do create a federal right to 'copy and use.'"); *citing also Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111 (1938).

The Federal Circuit, in *Elmer v. ICC Fabricating*, 67 F.3d 1571 (Fed. Cir. 1995), determined that the plaintiff's **asserted trade dress** for a sign (e.g., in this case, a round towel) **was functional and invalid because it was broader than the patent claim, and lacked some of the limitations of the patent claim** (e.g., in this case, a strap attached to the towel) **in a utility patent** owned by the plaintiff. The Court noted that the plaintiff could not, bypass the statutory requirements of the patent laws and obtain broadened patent protection under the guise of trade dress law:

> Enforcing a "trade dress" right defined, as it was here, to be... broader than, claim 1 of the '994 patent would frustrate that right because trade dress protection may last indefinitely and thus **competitors** could not effectively **"copy and use"** the invention after the patent expires.

*Id.* at 1579-80, *see also* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §7:89.30 (4th ed. 2008), at n20, *citing Dorr-Oliver, Inc. v. Fluid-Quip, Inc.,* 94 F.3d 376 (7th Cir. 1996) (after the plaintiff "reaped the rewards of its patents" on an industrial machine for the patent term, "the product passed into the public domain;" thereafter, defendant's introduction of a look-alike machine is not unfair competition when clearly labeled as to source).

Analogously, in this case, Franek's Round Towel Mark consists of a "simple white disc" for a "round beach towel" which is broader than the invention claimed in each of Franco's asserted utility patents since it lacks some of the claimed limitations (such as around towel with "a hook" or "an elastic strap" in the '845, and '861 patents, or a round towel with "a drawstring" or "draw cord" in the '029 and '978 patents). Thus, Franek's Round Towel Mark is functional and invalid. *See id.* at §7:89.3; *see also Kohler*, 12 F.3d at 647. That is, once Franco's asserted '845, '861, '029, '978 U.S. utility patents expired, the inventions claimed therein, including the claimed functional round towels

went into the public domain. Franek cannot be permitted by this Court to "bypass the statutory requirements of the patent laws and obtain broadened patent protection under the guise of trademark law." Accordingly, contrary to Franek's assertions, Jay Franco had a right to copy and sell round towels as early as August 27, 1974 (the expiration date of the '845 patent), unhindered by Franek's Round Towel Mark which represents nothing more than an improper exclusionary restraint on a product configuration that was already part of the public domain when Franek's trademark registration was filed in 1986.

**VI.   CONTRARY TO FRANEK'S ASSERTIONS, THE "ESSENTIAL FEATURE" OF FRANEK'S ROUND TOWEL MARK AND THE "CENTRAL ADVANCE" OF FRANCO'S ASSERTED UTILITY PATENTS ARE ONE AND THE SAME.**

In an attempt to confuse this Court, Defendant Franek asserts that based on the Supreme Court's ruling in *TrafFix*, Franco's asserted utility patents do not evidence the functionality of his Round Towel Mark because the "essential feature" of his mark, [a round or circular towel], does not practice the "central advance" of Franco's asserted utility patents. However, Defendant's interpretation of *TrafFix* is incorrect and **contradicts** this Court's analysis and application of the Supreme Court's ruling in *TrafFix* as set forth in *Berlin Packaging*, 381 F.Supp.2d at 792-804. In addition, Defendant conveniently ignores the undisputed fact that a "circular or round towel" is part of the "central advance" of each of Franco's asserted utility patents because a "circular or round" towel configuration is recited in the patent claims of each patent as a necessary structural and functional element of each claimed towel invention.

**A.     The *TrafFix* Decision**

In *TrafFix*, because the dual spring design in MDI's patent were spaced much farther apart and had a very different look than the dual spring design in the asserted trade dress, the Supreme

Court on review, found it necessary to analyze whether the patent and trade dress overlapped. *See*

*Berlin Packaging*, 381 F.Supp.2d at 799-800, *analyzing TrafFix* at 532 U.S. at 30.

<u>**Close Together Dual Spring Design**</u>          <u>**Spaced Apart Dual Spring Sign**</u>
<u>**Alleged as MDI's Trade Dress**</u>                    <u>**as Shown in MDI's Patent**</u>

                                              

In order to accomplish this analysis, the Court compared the "essential feature" of MDI's

asserted trade dress to the "central advance" claimed in MDI's expired utility patents. *Id.* at 799-800,

*analyzing TrafFix* at 532 U.S. at 30. The Court found that the "essential feature" of the trade dress

(the dual vertically arranged closely spaced coil springs) and the "central advance" of the expired

utility patents were the same: the dual-spring design. The Court reasoned that although this single

"essential feature" (the dual vertically arranged closely spaced coil springs) was **not literally claimed,**

**disclosed, nor depicted** in MDI's utility patents, it still overlapped the "central advance" of MDI's

patents because the vertically arranged closely spaced coil springs were covered by the claims of

MDI's expired patents under a doctrine of equivalents, patent infringement analysis. *See id.*

The Supreme Court concluded that because the "essential feature" of MDI's asserted trade

dress, the dual-spring design (of its dual vertically arranged closely spaced coil springs product), was

determined to be "necessary to the operation of [the claimed traffic sign stand's in MDI's patents]"

and "the reason the [claimed traffic sign stand] device[s] worked," the "essential feature" of MDI's

asserted trade dress was found to be the same as the "central advance" of MDI's patents, and therefore

"purely functional" *Id.* at 801-802, *analyzing TrafFix* at 532 U.S. at 34-35. Moreover, although the

"essential feature" of MDI's asserted trade dress (the dual vertically arranged closely spaced coil springs) were neither literally claimed nor disclosed in MDI's utility patents, they were determined to be **functional** and precluded from trade dress protection because they were covered by the claims of MDI's patents under a doctrine of equivalents analysis. Thus, MDI's trade dress was found to be functional based on a single structural element's functionality as evidenced by the specification of MDI's '482 and '696 patents.

### B. Applying *TrafFix*

In this case, it cannot be disputed that the "central advance" (the round and circular towels claimed, disclosed, and shown in Franco's asserted utility patents), and the "essential feature" (the round towel that is the subject of Franek's Round Towel Mark are identical.

By way of comparison, in *Berlin Packaging*, 381 F.Supp.2d at 802, this Court applied *TrafFix*, 532 U.S. 23, to the facts in that case and determined that the "essential feature" of the plaintiff's claimed trade dress and the "central advance" of the plaintiff's expired utility patent overlapped. In that case, this Court first held it to be "important" that the cap protected by the plaintiff's expired U.S. Patent No. 4,281,778 ("the '778 patent") (shown below on the right) and the cap the plaintiff sought to protect by trade dress (shown below on the left) were identical, despite the additional structures depicted in the plaintiff's patent. *Id.* at 802.





In *Berlin Packaging*, in contrast to *TrafFix*, the design of the plaintiff's asserted trade dress did not have a "very different look" than the design depicted in the plaintiff's utility patent. In fact, unlike in *TrafFix*, the design of the plaintiff's asserted trade dress was identically depicted (and literally claimed and disclosed) in the plaintiff's expired utility patent. *Id.* at 800 and 802. Thus, its was not necessary for this Court to engage in a "*TrafFix* like" infringement analysis to determine if the design of the plaintiff's asserted trade dress was identical to the design disclosed by the plaintiff's expired utility patent.

Analogously, in this case, the design of Franek's registered Round Towel Mark (shown below on the left) is identical to the round and circular towels depicted in Franco's asserted utility patents. (In addition, the round configuration of Defendant Franek's Round Towel Mark is claimed and disclosed in each of Franco's asserted utility patents.)    For example, as shown in the below illustration, it cannot be disputed that the round towel depicted (disclosed and literally recited in the claims) in the expired '845 utility patent (shown in Fig. 1 below on the right) is identical to Franek's registered Round Towel Mark. (SOF ¶¶5 and 26-32):

         

Accordingly, contrary to Franek's assertions, because Franek's Round Towel Mark is identical in appearance to the round towel depicted in the '845 patent (and the round towels depicted in Franco's other asserted utility patents), it is not necessary for this Court in this case to engage in a "*TrafFix* like" infringement analysis to determine that the design of Franek's Round Towel Mark is

identically disclosed and literally recited in the claims of Franco's asserted utility patents. It is "important" and cannot be disputed that they are identical. *See id.* at 802.

In addition, in *Berlin Packaging*, this Court determined that the "essential feature" of the plaintiff's trade dress ("a unique looking locking cap" for the purpose of "fit[ting] on charcoal lighter fluid and similar containers") and the "central advance" of the plaintiff's expired utility patents ("a unique locking cap" for the purpose of "provid[ing] a novel and improved leak resistant and child-safe locking arrangement for holding the cap permanently captive on the container, while at the same time not interfering with the assembly and filling of the container at the manufacturing facility") were identical, even though the "central advance" claimed in the plaintiff's expired utility patent had different purposes than the "essential feature" depicted in the plaintiff's asserted trade dress. Furthermore, this Court determined that the "essential feature" and the "central advance" of the plaintiff's respective trade dress and expired utility patents were identical despite the fact that the plaintiff's '778 patent claimed and depicted structural elements, such as "internal, circularly disposed ratchet teeth" that were not depicted or claimed to be part of the plaintiff's asserted trade dress design. *Id.* at 802.

Analogously, in this case, the fact that Franco's asserted utility patents claim and depict additional structural elements, such as "a hook" or "an elastic strap" in the center of the round towel in the '845, 861, and '229 patents; or "a drawstring" or "draw cord" around the periphery of the round towel in the '029 and '978 patents (in addition to claiming and depicting round and circular towels) is of no consequence in equating the "central advance" of Franco's asserted utility patents with the "essential feature" of Franek's Round Towel Mark. Nor is it of any consequence that when these claimed, additional structural elements are combined with a round or circular towel, they provide a

-11-

claimed or disclosed additional function. Under *TrafFix* and *Berlin Packaging*, all that is necessary is that the "look" or round configuration of Franek's round towel "is necessary to its operation; it is the reason Franek's towel works." *Id.* at 802, *applying TrafFix*.

In this case, it is undisputed that there is only one element that can be the "essential element" of Franek's Round Towel Mark – a round or circular towel.[2] In addition, despite Franek's assertions to the contrary, the **central advance claimed in each of Franco's asserted patents requires a circular or round towel**: '029 patent – "A towel-bag construction formed by a **circular towel** of woven terry fabric that provides a towel **that when used for sunbathing requires no repositioning toward the changing angle of the sun** and may also be converted into a bag for transporting various and sundry sunbathing articles, as well as used as an absorbent, heat-retaining garment." Col. 1, lines 45-57. **'978 patent** – "a towel-bag apparatus which is adapted to move easily between an open position wherein a generally **circular fabric towel** element provides a towel for drying purposes or to be laid on the beach for sunning purposes and to a closed or partially closed position with the employment of a draw cord on the generally circular towel element to provide an enclosed bag." Col. 1, lines 37-44. **'845 patent** – "A **circular form of a towel** body for providing a relatively large area of toweling for use by small children and by suspending the body with an elastic strap or band at the center of the towel, the towel will not be placed under undue tearing strain if the towel is pulled laterally or downwardly." Col. 2, lines 22-27. **'229 patent** – "A **towel** or cloth suspended from a hook that is designed to have the shortest possible hanging length, and is therefore preferably **circular**." Abstract. **'861 patent** – the combination of a holder and a **circular towel** connected to the

---

[2] Judge Cudahy of the Seventh Circuit described the only element of Defendant Franek's Round Towal Mark as "a simple white disc [for]... a round beach towel." *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 647 (7th Cir. 1993)(Cudahy, J.).

holder at the approximate geometric center of the towel such that when the towel is draped, it provides a neat appearing decorative assembly functional for use in that a minimal amount of towel is utilized for anchoring the same with the remainder being usable for drying hands. Abstract.

Accordingly, it cannot be disputed that the "essential feature" of Franek's Round Towel Mark and the "central advance" of Franco's asserted utility patents are "one and the same." *Id.* at 802.

## VII.   THE *FUJI, LOGAN,* AND *KEYSTONE* CASES CONFIRM THAT FRANEK'S ROUND TOWEL MARK IS FUNCTIONAL.

In a further attempt to confuse this Court, Defendant Franek cites the cases of *Keystone Mfg. Co. v. Jaccard Corp.*, No. 03-648, 2007 WL 655758 (W.D. N.Y. Feb. 26, 2007); *Fuji Kogyo Co., Ltd. v. Pac Bay Int'l, Inc.*, 461 F.3d 675 (6th Cir. 2007); and *Logan Graphic Products, Inc. v. Textus, Inc.*, No. 02-1823, 2003 WL 31870549 (N.D. Ill. Dec. 23, 2002) to support his contention that his Round Towel Mark is not functional because his round beach towel does not practice or infringe the claimed elements of Franco's asserted utility patents. However, Franek's reliance on these cases is misplaced. Contrary, to Defendant Franek's contentions, the holdings in these cases confirm that it is **not necessary** that Franek's round beach towel must practice or infringe all of the claimed elements of Franco's asserted utility patents in order for Franek's Round Towel Mark to be functional.

The *Fuji* opinion is instructive. In that case, the plaintiff Fuji appealed a decision of the district court which cancelled three of the Fuji's registered trademarks because it found them to be functional and therefore unprotectable. On appeal, the Sixth Circuit affirmed the district court's findings that the Fuji's trademarked fishing line guide leg designs (Models: N, LR, LV, and SV) **to be functional and invalid as evidenced by the Fuji's utility patents, advertisements, and admissions**. 461 F.3d at 675.

-13-

On *de novo* review the Sixth Circuit determined that Fuji's registered trademarks protecting its N and LR model line guides (first and second embodiments)(shown below on the left) were functional, and part of the public domain, because their shapes and functions were **identically disclosed in the specification** of the Fuji's expired U.S. Patent Nos. 3,690,027 ("the 027 patent") and 4,215,504 ("the '504 patent")(shown below on the right)[3] 461 F.3d at 682; *see also McCarthy on Trademarks and Unfair Competition* §7:89 at n13, *discussing Fuji*, 461 F.3d at 675 ("Court did not take literally the Supreme Court's mention of a patent 'claim.' The Sixth Circuit used the **specification** of a patent to find functional the design of fishing rod line guides which had been the subject of utility patents."); *citing In re Howard Leight Industries, LLC*, 80 U.S.P.Q.2d 1507, 2006 WL 1968605 (T.T.A.B. 2006) ("All parts of a utility patent, including both claims and disclosure, are relevant evidence of functionality.")

---

[3] Specifically, the Court stated:

...we note that Fuji's model N guide is **nearly identical to the specification** disclosed in the '027 patent as the preferred embodiment of its invention.... Fuji has sought to trademark a patent's **disclosed specification** for a product that is utilitarian and unadorned. On the strength of this identity, the obvious utility of the design, and the method disclosed for fashioning line guides in the '027 patent, this design must be considered now to be in the public domain. Further, Fuji's LR-type guide is **substantially identical to the specification** disclosed in the '504 patent. For the same reasons, this design should also be considered in the public domain. When a utility patent expires, "there passes to the public the right to make the machine in the form in which it was constructed during the patent." *Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169, 185 (1896). As an inescapable consequence of this right, a court may not prevent an individual skilled in the art of line guide manufacture from duplicating the **specification** disclosed in either the '027 or '504 patent and creating guides identical to the N and LR models. *See* 35 U.S.C. § 112. Therefore, based solely upon our understanding of patent law, the district court was justified in cancelling Fuji's '505 registration and dismissing its claims based upon its unregistered LR design.

*Fuji*, 461 F.3d at 682 (emphasis added).





Significantly, because the Court had already determined that the shape and design of Fuji's N and LR guides were identically disclosed in the **specification** of the plaintiff's '027 and '504 patents, the Court held the N and LR guides to be "literal embodiments of Fuji's '027 and '504 patents." *Id.*  However, since the shape and design of the SV and LV guides (third and fourth embodiments)(shown below on the left) were not identically disclosed in the specification or literally claimed in the patent claims of Fuji's '027 and '504 patents (shown below on the right), the Court, conducted a "*TrafFix* like" infringement analysis to determine if the shape and design of the SV and LV guides were covered by Claim 1 of Fuji's '027 patent.





In accordance with *TrafFix*, the Sixth Circuit concluded that the SV and LV guides could be seen as equivalent embodiments of the Fuji's '027 patent and therefore functional designs.[4]  *Id.* at 689.

---

[4]  Specifically, the Court stated:

...the SV and LV guides can be seen as equivalents under the doctrine of equivalents. The SV design differs from the '027 patent in a minimal way; the attachment point of the dual legs is moved from the midline of the ring (its equator, so to speak) to a point nearer the bottom of the ring (in its southern hemisphere). Nothing is otherwise changed. Each element still "performs substantially the same function in substantially the same way to obtain the same result." The LV

-15-

Similarly, in the unpublished *Logan* opinion, the defendant argued that the plaintiff's motion for a preliminary injunction should be denied because every aspect of the plaintiff's asserted trade dress for a mat cutting product, including the exact shape and color scheme, are disclosed in the plaintiff's U.S. Patent No. 4,158,977 ("the '977 patent"). This Court determined that the plaintiff's '977 patent only "protected a cutting tool in which a blade pivoted on a base and slipped through a slot to cut" (depicted on the below right in patent Fig.1). Thus, there was no issue that the '977 patent did not evidence the functionality of the plaintiff's asserted trade dress because it clearly did not claim (either literally or under the doctrine of equivalents), disclose, or depict the exact shape and color scheme of the plaintiff's mat cutting product (depicted on the below left)  2003 WL 31870549 at *7.

    

In the unpublished *Keystone* opinion, the plaintiff had claimed that the defendant's trade dress was invalid because the features of the defendant's trade dress for a meat tenderizer were claimed to be functional in the plaintiff's expired utility patent (U.S. Patent No. 4,463,476 ("the '476 patent"). Since the specific shapes of the blade cover and handle of the meat tenderizer product for which the defendant sought to protect as trade dress were not literally claimed or described in the specification of the '476 patent, but were only recited as "blade cover means" and "handle means" in claim 15 of the '476 patent, there was an issue as to whether the '476 patent covered the specific design of the

_____

design is a closer case because it is missing a rear leg. However, as a device to assist the finding of functionality, it is clear that, given the purpose of the device disclosed in the '027 patent, the patent evidence increases the likelihood of finding that the LV design is also functional.

defendant's meat tenderizer product that it sought to protect as trade dress. (Illustrated below is the plaintiff's meat tenderizer product for which it sought to protect as trade dress. The picture depicts the shapes of the blade cover and handle of the plaintiff's meat tenderizer):



Thus, it was necessary just as in *TrafFix*, for the Western District of New York court to conduct a claim construction, "infringement type" analysis to determine if the defendant's product practiced or infringed the '476 patent. Because the defendant's meat tenderizer product did not contain or practice the requisite claimed novel feature of the '476 patent – drainage holes – either literally or under the doctrine of equivalents, the defendant's '476 patent did not evidence the functionality of the defendant's trade dress.[5] 2007 WL 655758 at *5-*6.

In summation, in *Fuji*, the Court had to analyze four (4) different commercial embodiments in order to determine that their corresponding trademarks were functional and invalid. Because the shapes and designs of the first and second embodiments of the alleged trademarks were identically

---

[5] In fact, the *Keystone* court alluded that its decision may have been different if the plaintiff had asserted a prior expired patent also owned by the defendant, U.S. Patent No. 4,199,841 ("the '841 patent") instead of the '476 patent. The court admitted that the '841 patent did not require or claim drainage holes and was practiced by the defendant's meat tenderizer product:

> [the defendant] now persuasively demonstrates that the meat tenderizers at issue are not of the variety disclosed in the '476 patent. Rather, they practice the '841 patent, which does not include the "means" terms present in Claim 15 of the '476 patent.

*Id.* at *2-*5.

-17-

disclosed in the **specification of a utility patent** as functional, it was not necessary for the Court to conduct an infringement analysis for those embodiments. For the same reasons, a patent infringement analysis is not necessary in this case.

However, because the shape and design of the third and fourth embodiments of the alleged trademarks in *Fuji* were not identically disclosed in the specification or literally claimed in the patent claims, just as in *Logan* and *Keystone*, the *Fuji* court conducted an infringement analysis of the patent to determine if the shapes and designs of the third and fourth embodiments of the alleged trademarks were covered by the claims of a utility patent. This is not the case here, because the same round towel configuration of Franek's Round Towel Mark is shown in the patent drawings, and recited and described in the patent claims and specification, as being functional. Thus, it is not necessary for this Court to conduct an patent infringement analysis in this case.

## VIII.    FRANCO'S ASSERTED UTILITY PATENTS ARE PRESUMPTIVE EVIDENCE OF THE FUNCTIONALITY OF FRANEK'S ROUND TOWEL MARK REGARDLESS OF WHETHER FRANEK EVER OWNED THESE PATENTS OR WHETHER OR NOT THESE PATENTS WERE EXPIRED WHEN FRANEK FILED HIS ROUND TOWEL MARK.

Defendant Franek asserts in its Response that: *TrafFix*, 532 U.S. at 23, and its progeny "only focus on situations" where a party seeks to trademark the design of a product previously covered by the **same party's** expired utility patent; therefore, utility patents do not provide evidence of the functionality of a trademarked design unless the utility patents are: (1) inactive and (2) owned by the same party asserting trademark protection for the same design. Based on this premise, Franek presumably argues that Franco's asserted patents do not evidence the functionality of his Round Towel Mark because he never owned any of these patents and some of these patents are active and still in force. However, this argument is premised on an incorrect statement of law.

-18-

Contrary to Franek's assertion, "**a functional patent is evidence of functionality <u>regardless</u> <u>of who owned the patent</u>**." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §7:89.30 (4th ed. 2008)(emphasis added); *see also Id.* at n12, *citing In re Virshup*, 42 U.S.P.Q.2d 1403 (T.T.A.B. 1997)("**The key is not who owns these patents, but rather what they disclose**."). In addition:

> ... Functional patent protection and trademark protection are **mutually exclusive**. As one court stated, when the configuration is disclosed in a functional patent, and the patent expires, the public "now has its inning."

*Id.* (emphasis added). The Supreme Court has clearly stated in *Traffix* that "a **utility patent is strong evidence that the features therein claimed are functional**." 532 U.S. at 29 (holding that the dual spring design of the plaintiff's alleged trade dress was **functional** and incapable of trade dress protection specifically because the dual spring design was disclosed and claimed in a utility patent)(emphasis added).[6] In fact, Chief Judge Holderman of this Court noted in *Specialized Seating*, that the existence of a **utility patent creates a presumption that the claimed features in a trademark registration are functional**. 472 F.Supp.2d at 1010, *citing TrafFix*, 532 U.S. at 29.

Accordingly, because Franco's asserted patents claim, disclose and show the functionality of a round towel configuration, they provide **strong and irrefutable evidence** that Franek's Round Towel Mark is functional and invalid, **regardless of who owns them**. In fact, Franco's asserted patents create a **presumption** that Franek's Round Towel Mark is **functional**.

---

[6] "In its 2001 *TrafFix* decision, the Supreme Court characterized the 1999 amendment to Lanham Act § 43(a) as a 'statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection.' This apparently means that even if [a party] has an incontestable registration, if there is a relevant utility patent showing the design, a 'heavy burden' is imposed on [that party] to prove that the design is not functional." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §7:89.30 (4th ed. 2008), *citing TrafFix*, 532 U.S. 23; *see also id.* at §7:89.30, n4 *citing Eco Mfg. LLC. v. Honeywell Intern., Inc.*, 357 F.3d 649 (7th Cir. 2003)("affirming denial of preliminary injunction to Honeywell, the owner of an incontestable registration for a round shaped thermostat.").

Equally unavailing is Franek's assertion that Franco's asserted utility patents that were still in force when he filed his Round Towel Mark cannot evidence the functionality of his Round Towel Mark. **Whether a functional utility patent in evidence is active or has expired**, "is of **no significance to its evidentiary weight as to the functionality of the configuration at issue**." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §7:89.30 (4th ed. 2008)(emphasis added); *see also id.* at n.21 ("The utility patent relied upon in *In re Telesco Brophey, Ltd.*, 170 U.S.P.Q. 427 (T.T.A.B. 1971), and in *In re Oscar Mayer & Co.*, 189 U.S.P.Q. 295 (T.T.A.B. 1975), was still in effect and unexpired.").

Accordingly, the fact that some of Franco's asserted patents that claim, disclose and show the functionality of Franek's Round Towel Mark were still active and unexpired when he filed and registered this mark **does not affect the  presumption** that Franek's Round Towel Mark is **functional**. Specifically, in accordance with McCarthy, the fact that Franco's asserted '029 patent was filed (02/24/1987) approximately one year after Franek began using his Round Towel Mark (02/14/1986) and the fact that the '029 patent was filed more than one year before Franek obtained a registration for his Round Towel Mark (08/30/1988) do not diminish the evidentiary weight of functionality of the '029 patent since the identical round configuration for a beach towel is claimed, disclosed, and illustrated therein.

IX. **BECAUSE FRANEK'S ROUND TOWEL MARK IS PRESUMPTIVELY FUNCTIONAL, FRANEK'S ASSERTIONS OF THE "SECONDARY MEANING" OF HIS ROUND TOWEL MARK AND OF ALTERNATIVE DESIGNS FOR BEACH TOWELS ARE UNAVAILING.**

Franek further argues in his Opposition that his Round Towel Mark is not functional because: (1) it has acquired "secondary meaning," and (2) numerous alternative designs exist for the shape of beach towels (other than round) such that "competition is not stifled by the inability of competitors

to sell round beach towels." However, Franek's arguments are unavailing. Instead, the Supreme Court's *TrafFix* decision dictates granting Jay Franco partial summary judgment in this case.

### A.    <u>Secondary Meaning</u>

Franek asserts in his Opposition that because the Trademark Office accepted his Section 15 Declaration of Incontestability during the prosecution of his Round Towel Mark, Jay Franco **may not contest** that his Round Towel Mark has obtained secondary meaning. However, Franek's assertion is unavailing since he ignores the fact that the Trademark Office did not have before it the evidence presented by Jay Franco in this case consisting of utility patents, and Franek's own advertisements and admissions that presumptively prove the functionality of his Round Towel Mark. Significantly, in this case, **Franek has not presented any evidence of the secondary meaning of his Round Towel Mark** that would rebut the presumption that this mark is functional and invalid.

The Supreme Court stated in *TrafFix* that if a device is functional, there is no need to determine whether the design has acquired **secondary meaning**. *See Berlin Packaging*, 381 F.Supp.2d at 801, *citing TrafFix*, 532 U.S. at 33 ("Functionality having been established, whether ... [the] dual-spring design has acquired secondary meaning does not need to be considered."). In addition, the Seventh Circuit held in *Honeywell*, that an **"incontestible" registered trademark** may still be found invalid if functional. 357 F.3d at 651-52.

Accordingly, because Franek's Round Towel Mark is illustrated, described, and claimed in Franco's asserted utility patents it is presumptively functional. Therefore, evidence that Franek's Round Towel Mark is "incontestable" or has acquired "secondary meaning" is inconsequential.

### B.    <u>Alternative Designs</u>

In addition, Franek argues that numerous alternative designs exist for the shape of beach towels (other than round), e.g. shapes of animals, fish, surfboards, flowers, dresses, etc., such that

"competition is not stifled by the inability of competitors to sell round beach towels." To support this argument, Franek submits a self serving declaration of Clemens E. Franek wherein he baldly asserts that various **alternative configurations** of beach towels (other than round) would permit a person to reposition their body on the towel as the sun moves across the sky without moving the towel if the towel had the appropriate **surface area**.[7] However, Franek's arguments are of no avail.

Significantly, the Supreme Court determined in *TrafFix* that "[w]here the design is functional... there is no need to proceed further to consider if there is a competitive necessity for the feature... [or] to engage... in speculation about other design possibilities... which might serve the same purpose." *See Talking Rain Beverage Co. Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003), *citing TrafFix*, 532 U.S. at 33-34 (Because the dual-spring design is functional, "competitors need not explore whether other spring juxtapositions might be used.").

---

[7] Franek states in his Declaration that:

13. Beach towels now come in many configurations. There are as many alternatives for the design of beach towels as one could imagine. Beach towels have traditionally been rectangular or square in shape. In addition, attached hereto as Group Exhibit "A" are examples of beach towels in many shapes, such as the shape of different animals, fish, flowers, dresses, surfboards, etc. *The various configurations of beach towels are virtually endless. Each one of these towels, if provided the appropriate surface area, would allow a person to move about the towel without repositioning herself on the towel. Therefore, the __surface area__ of the towel, as opposed to the __shape__ of the towel, would allow one to move their body on the towel as the sun moves across the sky.*

*See* Opposition, Declaration of Clemens E. Franek ("Clemens Decl."), ¶13 (emphasis added). An analysis of Mr. Franek's declaration, reveals that his assertions as to alternative designs are the very type of conclusory and/or self serving statements determined not to be of evidentiary weight on summary judgments in this circuit. *See Hedberg v. Indiana Bell Telephone Co.*, 47 F.3d 928, 931 (7th Cir. 1995)(conclusory statements do not establish genuine issues of material fact); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)(self serving statements do not establish genuine issues of material fact).

-22-

Accordingly, because Franek's Round Towel Mark is illustrated, described, and claimed in Franco's asserted utility patents it is presumptively functional. Franek's evidence of **alternative designs** cannot rebut this presumption.

In addition, McCarthy has stated "that a design may still be functional, even if there are alternatives, if this design is one of only a small number of **superior designs**." *McCarthy on Trademarks and Unfair Competition* §7:75, *citing Restatement Third, Unfair Competition* §17, comment b (1995) ("[A] design may be functional if it is one of a limited number of superior designs.")(emphasis added). "The Supreme Court said that **even if there are alternative designs available in the marketplace, they cannot turn a feature that is functional... into a nonfunctional feature which is protected as trade dress**." *Id.* at §7:75 (emphasis added). As the Federal Circuit emphasized:

> That another type of [design] would work equally as well does not negate that this [design] was designed functionally to enhance or at least not detract from the rest of the system. ... If the feature asserted to give a product distinctiveness is the **best**, or at least one, of a few **superior designs** for its de facto purpose, it follows that **competition is hindered**. *Morton-Norwich* does not rest on total elimination of competition in the goods. ... As stated in *Honeywell*,... "The fact that [round] thermostat covers may be produced in other forms or shapes does not and cannot detract from the **functional** character of the configuration here involved.

*Id.* at §7:75, *citing In re Bose Corp.*, 772 F.2d 866, 872-873 (Fed. Cir. 1985)(internal citations omitted)(emphasis added).

In this case, Franek ignores the undisputable fact that the **round** configuration of a beach towel is also **functional** because it is the "best" or optimum (i.e., most compact and least bulky) shape for a beach towel (of only two or three "superior" designs – round, square, or rectangular shaped) because the round towel uses the **minimum "surface area" to perform the function** of not having to reposition a towel to face the changing angle of the sun as touted by Franek. *See* Opposition,

Clemens Decl., ¶13.  If only one company is granted a monopoly to make or sell this superior, round

shaped towel (having the minimum surface area), it would **stifle competition**.  In fact, Judge Cudahy

contemplated this exact scenario in *Kohler*: "Other registrations (and monopolies) may follow for

triangular beach towels, trapezoidal beach towels or whatever." 12 F.3d at 647.  Thus, giving Franek

trade dress or trademark protection would provide Franek with an indefinite monopoly on his round

beach towel configuration which is functional.  "The trademark laws were never intended to allow

an indefinite monopoly over functional products." *Specialized*, 472 F.Supp.2d at 1015, *citing*

*Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 164 (1995).

## IX.    <u>CONCLUSION</u>

For the above established reasons, Franek has failed to meet its heavy burden of proving that

his Round Towel Mark is nonfunctional and valid.  Accordingly, this Court should grant Jay Franco's

partial motion for summary judgment as a matter of law.

Dated: August 14, 2008                                   Respectfully submitted,

                                                         By:_____
                                                            Ezra Sutton
                                                            EZRA SUTTON, P.A.
                                                            900 Route 9, Suite 201
                                                            Woodbridge, New Jersey 07095
                                                            (732) 634-3520 - Office
                                                            (732) 634-3511 - Fax

*On the brief:*                                          Attorney for Plaintiff
Ezra Sutton                                              Jay Franco & Sons, Inc.
Anthony M. Morano